[Crim. No. 19820. Second Dist., Div. Two. Nov. 16, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID JOHNSON et al., Defendants and Appellants.

---

---

## COUNSEL

Manuel H. Miller for Defendants and Appellants.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Robert F. Katz, Deputy Attorney General, for Plaintiff and Respondent.

---

## OPINION

**COMPTON, J.**—Defendants David and Diane Johnson, who are husband and wife, appeal from convictions of various violations of the Health and Safety Code and of an attempt to violate section 12090 of the Penal Code (obliterating the manufacturer's number on a revolver).

On August 5, 1969, the Grand Jury of Santa Barbara County returned two indictments. In indictment number 86075, David Johnson was jointly charged with one Robert Wilson in nine counts alleging violations of Health and Safety Code section 11500 (possession of Demerol), 11500.5 (possession of Demerol for sale), 11555 (possession of paraphernalia), 11910 (possession of LSD and Benzedrine), 11911 (possession for sale of LSD and Benzedrine), and a violation of section 12220 of the Penal Code (possession and transporting a machine gun). These offenses were all alleged to have occurred on July 23, 1969.

In indictment number 86076, David and Diane were jointly charged in five counts with violating Health and Safety Code section 11530 (possession of marijuana), 11910 (possession of Seconal and amphetamine), 11911 (possession for sale of Benzedrine), and with violating section 12090 of the Penal Code (obliterating the manufacturer's number on a revolver). These offenses were alleged to have occurred on July 24, 1969.

The two indictments were consolidated for trial. The jury found defendants guilty of some counts, not guilty of others and failed to agree on yet other counts.

Specifically, David was convicted as follows: Under indictment number 86075:

(1) Possession of LSD on July 23, 1969, a violation of section 11910 of the Health and Safety Code;

(2) Possession of Demerol on July 23, 1969, a violation of section 11500 of the Health and Safety Code;

(3) Possession of Benzedrine on July 23, 1969, a violation of section 11910 of the Health and Safety Code;

(4) Possession of paraphernalia for injection of narcotics on July 23, 1969.

Under indictment number 86076:

(1) Possession of amphetamine on July 24, 1969, a violation of section 11910 of the Health and Safety Code;

(2) Possession of Seconal on July 24, 1969, a violation of section 11910 of the Health and Safety Code;

(3) Possession of marijuana on July 24, 1969, a violation of section 11530 of the Health and Safety Code;

(4) Attempting to obliterate the manufacturer's number on a revolver on July 24, 1969, a lesser included offense in violation of section 12090 of the Penal Code.

Diane was convicted under indictment number 86076 of (1) possession of Seconal on July 24, 1969, and (2) attempting to obliterate the manufacturer's number on a revolver on July 24, 1969, a lesser included offense in violation of section 12090 of the Penal Code.

## FACTS

The case against the two defendants rested primarily upon evidence seized by law enforcement agents at two locations in Santa Barbara County.

For some time prior to July of 1969, the two defendants resided at 4693 Atasco Drive, Santa Barbara.

On July 8, 1969, David Johnson, using a fictitious name, rented an apartment at 6778 Abrego in the Isla Vista area of Santa Barbara County. He advised the manager he wanted the apartment for just one month.

On July 23, 1969, police officers, armed with a search warrant, entered the apartment at 6778 Abrego. No one was on the premises. They seized in excess of 173,000 pills, 600 tablets of LSD, powdered methamphetamine (speed) of a value of $9,600, together with paraphernalia for the packaging for sale of the drugs and paraphernalia for the use of narcotics.

There was no evidence that the apartment was being used for living purposes.

The officers instituted a surveillance inside the apartment. Subsequently the defendant David Johnson, in company with his codefendant Wilson, entered the apartment and was arrested. He had a key to the apartment and gave the officers a patently fictitious account of his possession of the key and his reason for being there.

The officers then obtained another search warrant and went to defendants' residence at 4693 Atasco Drive. Diane answered the door. Upon seeing the officers and learning that they had a search warrant she hurriedly headed through the premises into a bedroom. An officer followed her in time to see her throw a small can out of the window. The officer grabbed Diane who turned and landed on a bed. When Diane was removed from the bed the officers discovered a loaded .22 caliber revolver on the bed in the spot where she had been lying. The serial number of the revolver had been filed off.

The officers recovered the can which Diane had thrown out of the window. It contained a number of pills and capsules, marijuana, an eye-dropper and a homemade syringe.

While the officers were on the premises Diane talked with David on the telephone. An officer interrupted the conversation and David stated to him ". . . this stuff is all mine. She has nothing to do with it."

At the trial Diane admitted throwing the can out of the window because she knew it contained illegal drugs. She also admitted possession of the gun but denied having obliterated the number.

### CONTENTIONS ON APPEAL

It is not surprising that neither defendant attacks the sufficiency of the evidence.

Their contentions are: (1) The two search warrants were invalid in that the affidavits upon which they were based were insufficient;[1]

---

[1]Defendants moved pretrial to suppress evidence under section 1538.5 of the Penal Code. Thus the validity of the search warrants is reviewable on this appeal from the judgment under section 1538.5, subdivision (m) of the Penal Code.

(2) Diane was prejudiced by an improper consolidation of the two indictments; (3) the defendants were improperly convicted of attempting to violate section 12090 of the Penal Code in that the evidence indicated that the number was obliterated and thus the verdict should have been either a conviction of the completed offense or an acquittal.

## THE SEARCH OF THE APARTMENT AT 6778 ABREGO

■ On July 23, 1969, Guido Hanek, the maintenance supervisor for the company which owned the apartment, lawfully entered the apartment in the course of his duties and observed the large quantity of drugs and a fully loaded machine gun. He removed the machine gun, the possession of which is a crime, and delivered it to the police. He told the police about the drugs he had seen.

A deputy sheriff obtained a search warrant on the basis of an affidavit in which he recounted the information imparted by Mr. Hanek.

It is conceded that Mr. Hanek did not act as an agent for the police and that until he reported his findings there had been no contact between him and the police. In the hearing under Penal Code section 1538.5, no evidence was presented, nor is any contention now made that Mr. Hanek was other than a reputable citizen of the community. His status, his description of the items he had seen and his delivery of the machine gun to the police, constitute a combination of factors which clearly establish that reliance upon his information by the police and the magistrate was reasonable. (See *Ming* v. *Superior Court,* 13 Cal.App.3d 206 [91 Cal.Rptr. 477]; *People* v. *Hogan,* 71 Cal.2d 888 [80 Cal.Rptr. 28, 457 P.2d 868]; *People* v. *Gardner,* 252 Cal.App.2d 320 [60 Cal.Rptr. 321].)

This search and seizure was so patently valid that we discuss it in some detail only because the evidence obtained provided the foundation for the second warrant which was issued.

## THE SEARCH OF DEFENDANTS' RESIDENCE

The officers went to defendants' residence armed with a search warrant which was obtained following the search and seizure which has been described above. This warrant was based on the affidavit of an officer who had participated in that search.

With nothing more than the knowledge of the illegal machine gun and the quantity of drugs and paraphernalia possessed by defendant at the apartment, a reasonable layman, let alone an experienced police officer, would have been justified in believing that defendant was a large scale trafficker in illicit drugs.

■■ The question here presented is whether the affidavit presented in support of the search warrant for defendants' residence was adequate to support the magistrate's conclusion that reasonable cause existed to believe that yet more contraband would be found at that residence.

The affidavit recounted the circumstances and results of the previous search and seizure. That information was augmented by two additional averments. First, the officer stated that a fellow officer, one Sergeant Evans, had identified defendant David Johnson to him as a major supplier of illegal drugs in the Santa Barbara area. While defendant labors mightily to assail the value of this averment his attack is misdirected. Sergeant Evans' information provided nothing that defendant himself had not already established by his maintenance of a veritable warehouse of illegal drugs at the above mentioned apartment.

Secondly, and significantly, the officer related that his experience in the field had provided him with knowledge of the habits and modus operandi of suppliers of illegal drugs. Of importance here is the statement of the officer that such persons routinely maintain their major stockpile away from their residence and a smaller quantity at or near their residence for the purpose of immediate sale.

The officer, based on this knowledge, swore to an honest belief that additional drugs would be found at defendants' residence. The magistrate entertained a similar belief. We are of the opinion that that belief was reasonable.

No contention is made that the officer lacked expertise. It is a matter of common knowledge that in California, officers of the major police and sheriffs' departments receive intensive training in narcotic enforcement. Officers assigned to that specialty, as this officer appears to have been, spend much of their time studying the habits and methods of persons engaged in illegal narcotic traffic.

■ This is not to say that a search warrant may be based solely upon a generalized statement of opinion by an officer concerning a defendant's suspected criminal activity. (Cf. *People* v. *Castro,* 249 Cal.App.2d 168 [57 Cal.Rptr. 108].)

On the other hand a magistrate, in deciding whether or not to issue a search warrant, can consider competent and relevant opinion evidence bearing on the issue of probable cause.

■ A magistrate's finding which is supported by competent and relevant evidence will not be disturbed on review. (*People* v. *Scoma,* 71 Cal.2d 332 [78 Cal.Rptr. 491, 455 P.2d 419]; *Skelton* v. *Superior Court,* 1 Cal.3d

144 [81 Cal.Rptr. 613, 460 P.2d 485].) ■ Although usually presented in affidavit form, such evidence is governed by the Evidence Code.

" 'Evidence' means *testimony,* writings, material objects, or other things presented to the senses that are offered to prove the existence or non-existence of a fact." (Italics added.) (Evid. Code, § 140.)

" 'Relevant evidence' means evidence, . . . having any tendency in reason to prove or disprove any . . . fact . . . ." (Evid. Code, § 210.)

"If a witness is testifying as an expert, his testimony in the form of an opinion is limited to such an opinion as is: (a) Related to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact; and (b) Based on matter (including his special knowledge, skill, experience, training, and education) perceived by or personally known to the witness . . . ." (Evid. Code, § 801.)

"Testimony in the form of an opinion that is otherwise admissible is not objectionable because it embraces the ultimate issue to be decided by the trier of fact." (Evid. Code, § 805.)

The test of probable cause "should not be understood as placing the ordinary man of ordinary care and prudence and the officer experienced in the detection of narcotics offenders in the same class. Circumstances and conduct which would not excite the suspicion of the man on the street might be highly significant to an officer who had had extensive training and experience in the devious and cunning devices used by narcotics offenders to conceal their crimes." (*People* v. *Williams,* 196 Cal.App.2d 726, 728 [16 Cal.Rptr. 836].)

*Cunha* v. *Superior Court,* 2 Cal.3d 352 [85 Cal.Rptr. 160, 466 P.2d 704] is inapposite. There the court simply found that the facts were not such as to be susceptible of any expert interpretation.

Furthermore, the officer here did not act upon his own opinion but presented it to a magistrate for his evaluation, an action which the exclusionary rule is designed to encourage. (*People* v. *Castro, supra,* at p. 175.)

In sustaining this warrant we give effect to the "preference accorded police action taken under a warrant . . ." so vigorously proclaimed in *United States* v. *Ventresca,* 380 U.S. 102, 107 [13 L.Ed.2d 684, 688, 85 S.Ct. 741].

Since we are not here dealing with hearsay information provided by an informant, *Aguilar* v. *Texas,* 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509], is not pertinent. In any event the officer spoke with first hand knowledge and from personal experience and provided the magistrate with under-

lying factual information that lent credence to his declaration as required by *Aguilar.*

The officer's extrapolation from the known facts of the previous search through his personal experience and expertise to his ultimate opinion was legally competent and factually persuasive.

Thus the evidence before the magistrate here stood quite apart from the unsubstantiated "conclusionary allegations," the "casual rumor circulating in the underground" or the "accusations based merely on an individual's general reputation" which were condemned in *Spinelli* v. *United States,* 393 U.S. 410, 416 [21 L.Ed.2d 637, 643-644, 89 S.Ct. 584]. (*United States* v. *Ventresca, supra,* at p. 108 [13 L.Ed.2d, pp. 688-689]; *Price* v. *Superior Court,* 1 Cal.3d 836, 841 [83 Cal.Rptr. 369, 463 P.2d 721].)

The officer's opinion was competent, relevant evidence which when coupled with the equally competent and relevant evidence of the circumstances of the previous seizure constituted quantitatively sufficient support for the magistrate's finding.

In *People* v. *Stout,* 66 Cal.2d 184 [57 Cal.Rptr. 152, 424 P.2d 704], defendant had been arrested in possession of certain payroll checks. In an affidavit for a search warrant, an officer who had participated in the arrest stated that a number of similar payroll checks had been stolen and that 100 of such checks were still missing. The officer further alleged that defendant resided at a certain location and that the officer hoped to find additional stolen material there. The search warrant was issued and incriminating evidence seized. Mr. Justice Sullivan, speaking for a unanimous court, found that "the sufficiency of the affidavit is manifest."

In *People* v. *Lundy,* 2 Cal.App.3d 939 [82 Cal.Rptr. 815], two persons were arrested in a vehicle in which was found a portion of the proceeds from a robbery. A rent receipt was found in the purse of the female arrestee. A search warrant was issued for the apartment indicated on the rent receipt. The Court of Appeal found that there were reasonable grounds to believe that other proceeds from the robbery would be found at the apartment. Thus the warrant was upheld.

These two cases give recognition to the obvious fact that the circumstances of an arrest often times can, without more, support a reasonable finding by the magistrate that the arrestee's home is a logical place to be searched for specific incriminating material.

In the case at bar, if additional evidence other than the results of the first search and arrest were needed, the officer's statement supplied it. It is an established proposition that "only the probability, and not a

prima facie showing, of criminal activity is the standard of probable cause, . . ." (*Spinelli* v. *United States, supra,* at p. 419 [21 L.Ed.2d at p. 645].)

## CONSOLIDATION OF THE INDICTMENTS

On October 3, 1969, defendants filed a "Notice of Motion for Joinder under Penal Code Section 954" supported by points and authorities. On October 20, 1969, the court granted the motion and the two indictments were consolidated.

It appears from the record that prior to the court's order of consolidation an affidavit of prejudice had been filed pursuant to section 170.6 of the Code of Civil Procedure. The record does not disclose which party filed the affidavit or against which judge. In any event on July 15, 1970, the order of consolidation was vacated, apparently for the reason that the affidavit had been filed.

The indictments were subsequently ordered again consolidated on motion of the People.

The trial apparently started on July 28, 1970. However, on July 31, 1970, a mistrial was declared because of illness of defense counsel.

On November 2, 1970, the trial began again. On that date defendants for the first time moved to sever the cases. The motion was denied.

Defendants' own authorities cited in support of the original motion to consolidate point to the correctness of the court's actions. Having requested the joinder, defendants cannot now be heard to complain.

The consolidation of charges against multiple defendants is proper where there is "a common element of substantial importance . . . [or] an underlying set of common facts and common evidence." (*People* v. *Chambers,* 231 Cal.App.2d 23, 32 [41 Cal.Rptr. 551].) Such was the situation here.

Furthermore, Diane was not prejudiced. She was convicted of just two of the charged offenses. As to those two offenses, she made a judicial confession concerning the drug conviction, and admitted, from the witness stand, possession of the altered firearm.

The consolidation was, if error, harmless beyond a reasonable doubt.

## ATTEMPT TO VIOLATE SECTION 12090 OF THE PENAL CODE

Section 12090 reads: "Any person who changes, alters, removes or

obliterates the name of the maker, model, manufacturer's number, or other mark of identification, including any distinguishing number or mark assigned by the State Bureau of Criminal Identification and Investigation, on any pistol or revolver, without first having secured written permission from the bureau to make such change, alteration or removal shall be punished by imprisonment in the state prison for not less than one year nor more than five years."

 There was testimony during the trial that the numbers on the pistol had been altered or partially obliterated.

Defendants' claim that if the jury believed the evidence they should have been convicted of the completed offense and not an attempt.

The complete answer to that contention is to be found in Penal Code section 663 which reads as follows: "Any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was perpetrated by such person in pursuance of such attempt, unless the court, in its discretion, discharges the jury and directs such person to be tried for such crime."

Defendants cannot complain that they received more leniency than that to which they were entitled.

The record reveals that defendants filed notices of appeal in each of the two consolidated matters on November 17, 1969, prior to the trial of the cases. Said notices purport to appeal from the denial of the motions to suppress under section 1538.5 of the Penal Code. Nothing further appears to have been done in connection therewith and in any event the statutes do not provide for such an appeal.

The purported appeals from the orders denying the motions to suppress evidence are dismissed. The judgments are affirmed.

Roth, P. J., and Herndon, J., concurred.