[Crim. No. 34138. Second Dist., Div. 5. Nov. 27, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLARD CHILDRESS, Defendant and Appellant.

**COUNSEL**

Jeffery A. Brightwell, under appointment by the Court of Appeal, and Robert J. Wade for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and William V. Ballough, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**STEPHENS, J.**—Defendant was charged with possession of marijuana for sale, a violation of Health and Safety Code section 11359. Two prior Health and Safety Code violations and a prior Penal Code section 487, subdivision 2 violation were alleged by amendment.

Defendant filed a motion to quash and traverse the search warrant and a Penal Code section 1538.5 motion. Both motions were heard and denied. Defendant then pled nolo contendere; the court struck the priors; defendant was found guilty. This appeal followed sentence.

The facts[1] are that on May 13, 1977, Edward Murphy, of the Los Angeles Police Department, 77th Area Narcotics Division, talked to two unidentified informants on the telephone. These informants alleged they had purchased quantities of marijuana from appellant, Willard Childress. Officer Murphy then obtained a "rap sheet" on the appellant, showing previous narcotics arrests; however, he did not check to see if the arrests were for the use or sale of narcotics. Murphy failed to take any notes of the telephone tips from the informants and later drafted the facts contained in his affidavit for the search warrant from memory as testified by him at the section 1538.5 hearing on March 31, 1978. Officer Murphy went to the location given by the informants, sat in a parking lot and kept the east side of appellant's residence under surveillance for one hour, during which time he observed three persons approach the back door of appellant's house, located at 502 West 149th Street. Apparently, these persons exchanged something, although Murphy was unable to ascertain what it was, and then departed. Subsequently, he returned to the police station, drafted the search warrant and the accompanying affidavit and obtained a magistrate's signature. On May 17, 1977, accompanied with other officers, Murphy returned to 502 West 149th Street, announced that he was a police officer, and said, "open the door!"; shortly thereafter, the door was forced open, the officers entered the residence, handed the appellant the search warrant, and proceeded to search both the appellant and his premises. A number of items were seized in the house, namely, wax bags, a scale, one and one-half pounds of marijuana, identification and keys. Murphy then proceeded outside the house to a parked car in the north driveway, which services the house, and asked whose car it was. The appellant told him it was his and that he did not have the keys to the car, because the car was inoperative as the rear end was out. Said car was parked on the grass, with weeds growing around it, and was covered with dirt to such a degree that it was difficult to see inside. The car contained a quantity of trash and a car registration which was visible. With a crowbarlike device, the passenger compartment was broken into and nothing was found except the registration. The trunk was then forcibly opened,

---

[1]The facts as stated by appellant in his opening brief were adopted by the respondent plus minor additional matters. We accept defendant's statement of fact with some additions.

without the appellant's permission, and the officer found approximately 25 pounds of marijuana, which were seized and booked into evidence.

CONTENTIONS

Defendant contends that the affidavit in support of the search warrant, directed to his residence was legally insufficient to support the issuance of the search warrant. Furthermore, defendant objects to the search of the trunk of the vehicle which revealed 25 pounds of marijuana on the grounds that the search was invalid because it was not specifically authorized in the search warrant.

SUFFICIENCY OF THE AFFIDAVIT
SUPPORTING THE SEARCH WARRANT

If the affidavit which formed the basis for the issuance of the search warrant was legally insufficient, defendant's motions to quash and traverse the search warrant, and his motion to suppress the evidence, secured as a result of the search of defendant's residence, should have been granted. The basis for defendant's attack upon the affidavit supporting the search warrant is to the effect that the information contained therein came from two untested informants without sufficient supporting corroboration of the reliability of the information to constitutionally support the issuance of the warrant.

The Fourth Amendment of the United States Constitution provides that "...no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the person or things to be seized." The Fourteenth Amendment to the United States Constitution fully incorporates the fundamental rights of the Fourth Amendment. (*Ker* v. *California* (1963) 374 U.S. 23, 30 [10 L.Ed.2d 726, 735, 83 S.Ct. 1623].)

■ "If a search warrant is to satisfy the constitutional requirement of probable cause, the affidavit upon which the search warrant is based must contain 'competent evidence' that is sufficient to support the magistrate's finding of probable cause." (*People* v. *Magana* (1979) 95 Cal.App.3d 453, 460 [157 Cal.Rptr. 173].) The crucial question is what constitutes competent evidence.

The controlling test for determining what constitutes probable cause for the issuance of a search warrant within the meaning of the Fourth Amendment is whether the magistrate is informed "of some of the underlying circumstances from which the informant concluded that the

narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant...was 'credible' or his information 'reliable.'" (*Aguilar v. Texas* (1964) 378 U.S. 108, 114 [12 L.Ed.2d 723, 729, 84 S.Ct. 1509].) This test has been adopted by the State of California. (*People v. Smith* (1976) 17 Cal.3d 845, 850 [132 Cal.Rptr. 397, 553 P.2d 557].)

■ A review of the affidavit of Officer Murphy establishes that the affidavit sets forth the two informers' statements. Those statements were factual, not conclusionary, and establish that the informers spoke from personal knowledge of the matters stated to the affiant. Therefore, the first prong of the *Aguilar* test is satisfied.

The second prong of the test demands that if the informers are untested, and therefore unreliable, the affiant must show underlying facts which would establish the informers' reliability. "...[I]nformation given by an untested informant may be sufficient if corroborated in essential respects by other facts, sources or circumstances." (*People v. Fein* (1971) 4 Cal.3d 747, 752 [94 Cal.Rptr. 607, 484 P.2d 583].)

In the case at bar, Officer Murphy received detailed information from two independent sources. Murphy further corroborated the information supplied by the independent sources by conducting a surveillance of the premises where the alleged sales of marijuana took place.[2] In addition, he ascertained that defendant had had previous narcotic arrests. The officer observed three people, on three separate occasions, enter the rear yard through a gate, approach the rear door of the house, knock on the door, have a conversation, make a hand-to-hand exchange, and then depart. This corroborating information tended to establish that the resident in this house was engaged in narcotic sales, with narcotics being stashed on the premises which formed the subject of the search warrant here attached.

In view of this corroborative information, we hold that the search warrant was properly supported by probable cause findings by the issuing magistrate and that the trial court properly denied defendant's motion to suppress the evidence seized pursuant to the execution of the search warrant.

---

[2] "...[T]here may be circumstances where corroborative information from separate, unrelated sources will thereby establish its credibility...."(*People v. Fein, supra,* 4 Cal.3d at p. 753.) We need not reach the issue of whether the statements of these two independent informers by themselves are sufficient corroboration for the Fourteenth Amendment purposes.

## ■ VALIDITY OF THE SEARCH OF THE VEHICLE

The order portion of the warrant in issue contained the following areas to be searched. "All storage areas and containers located both inside and outside of the premises, under the control of persons living within the premises." In the present case, we are presented with a peculiar situation wherein the vehicle that was searched was inoperable and stationary and was parked in the defendant's back yard. In addition, the vehicle was filthy with trash on both front and rear floorboards and paper strewn about the front seat. It was parked in a grassy area, with no tire marks leading to the vehicle. Under the facts here present, we hold the "vehicle" was used as a storage area within the purview of the warrant.

At trial, the People successfully contended that the phrase "storage areas" should be construed to include the vehicle parked in defendant's yard. Defendant, on the other hand, claims that such a construction amounts to a constitutionally impermissible violation of his Fourth Amendment rights. ■ Whether the description in the warrant of the property to be seized is sufficiently definite is a question of law on which an appellate court makes an independent judgment. (See *Aday* v. *Superior Court* (1961) 55 Cal.2d 789, 795-796 [13 Cal.Rptr. 415, 362 P.2d 47]; *Thompson* v. *Superior Court* (1977) 70 Cal.App.3d 101, 108 [138 Cal.Rptr. 603].)

In *People* v. *Dumas* (1973) 9 Cal.3d 871 [109 Cal.Rptr. 304, 512 P.2d 1208], the court states at pages 880-881: "Defendant's automobile was not specifically mentioned in the warrant nor was it found in any of the places that were specifically mentioned. The People contend that the language of the warrant reading 'storage areas . . . used by occupants of the aforesaid apartment' is sufficiently broad to include defendant's automobile. While an ordinary passenger automobile conceivably can be used as a receptacle for the storage of various articles it is hardly a storage area of an apartment within the ordinary meaning of that phrase, and it is highly doubtful that the magistrate issuing the warrant intended to extend its scope beyond sites such as closets, lockers, storerooms, and sheds that the expression storage area of an apartment normally encompasses.[4] The description in a search warrant must be sufficiently definite that the officer conducting the search 'can with reasonable effort ascertain and identify the place intended.' (*Steele* v. *United States* (1925) 267 U.S. 498, 503 [69 L.Ed. 757, 760, 45 S.Ct.

414].) Nothing should be left to the discretion of the officer. (*Marron v. United States* (1927) 275 U.S. 192, 196 [72 L.Ed. 231, 237, 48 S.Ct. 74].) The broad interpretation that the People urge would violate these principles by allowing police officers excessive latitude to determine the scope of any warrant containing language which only they suggest is ambiguous concerning the place to be searched. [Fn. omitted.]

"While it is not necessary that a search warrant state the name of the owner or a correct license number of the automobile to be searched (*Wangrow v. United States* (8th Cir. 1968) 399 F.2d 106, 115, cert. den. (1968) 393 U.S. 933 [21 L.Ed.2d 270, 89 S.Ct. 292]), we conclude that a warrant supporting the search of a motor vehicle must, at the very least, include some explicit description of a particular vehicle or of a place where a vehicle is later found. (See generally Note 47 A.L.R.2d 1444.) Inasmuch as the warrant in the present case described neither the vehicle nor the site of the vehicle, it cannot serve to validate the search."

Footnote 4 of the quoted passage provides: "An automobile used 'primarily for the transportation of property' must be registered as a commercial vehicle rather than as an ordinary passenger vehicle. (Veh. Code, § 260.) Neither the Vehicle Code nor any statute defines an automobile as a storage area."

Clearly the instant case is distinguishable from the circumstances existent in *Dumas.* The very analysis of *Dumas,* however, recognizes that a factual circumstance such as that now before us can result in the different conclusion. Here the place where the vehicle was found was specified in the warrant and it cannot be said that "The description in [the] search warrant [was not] sufficiently definite [for] the officer conducting the search '[to] with reasonable effort ascertain and identify the place intended.'"

█ In the present case, the manner of *use* of the vehicle and its inoperable condition (which had existed for an obviously lengthy period of time) established it as a storage facility *and nothing more.*

The judgment is affirmed.

Kaus, P. J., and Hastings, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 24, 1980.