[No. F003260. Fifth Dist. Apr. 15, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
RAYMOND WALTER AHO, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exceptions of parts II through IV.

COUNSEL

Krech & Cole and Richard J. Krech for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Robert D. Marshall, Eileen Ceranowski and Jane Lamborn, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BEST, J.—

### STATEMENT OF THE CASE

Defendant appeals from his convictions of possession of methamphetamine for sale and possession of marijuana for sale, violations of Health and Safety Code sections 11378 and 11359. Defendant was sentenced to the middle term of two years for each conviction to be served concurrently. Defendant attacks his conviction and sentence on four points: (1) No prob-

able cause justified the search of his residence; (2) the trial court erroneously denied defendant probation; (3) the trial court erroneously imposed the middle term sentence; and (4) defendant's attorney was involved in a conflict of interest regarding the case that requires reversal.

## PROCEDURAL BACKGROUND

On May 3, 1983, an information was filed in the Stanislaus County Superior Court charging defendant with violating Health and Safety Code section 11378, possession of methamphetamine for sale (count I) and with violating Health and Safety Code section 11359 (count II) possession of marijuana for sale. Defendant was arraigned and pled not guilty to both counts.

Defendant subsequently filed a notice of motion and motion to suppress evidence pursuant to Penal Code section 1538.5. The trial court denied the motion to suppress on June 22, 1983, upholding a search warrant on the basis of *Illinois* v. *Gates* (1983) 462 U.S. 213 [76 L.Ed.2d 527, 103 S.Ct. 2317].

Defendant filed a motion to reconsider, but the motion was denied. Jury trial was set for September 19, 1983.

On September 19, defendant withdrew his plea of not guilty and entered a plea of guilty to counts I and II.

Before sentence was pronounced, defendant substituted Richard J. Krech as his attorney in the place of Cornelio Q. Hernandez.

On October 27, 1983, the trial court denied defendant probation and sentenced him to the middle term of two years on each count. The sentences were imposed concurrently.

## STATEMENT OF FACTS

On March 11, 1983, Officer Art Garza and several other police agents served a search warrant on defendant at his residence in Waterford. Agent Garza knocked on the front door of defendant's home. He advised defendant he was a police agent and that he had a search warrant. Defendant allowed the agents in the house. Agent Garza handcuffed defendant and gave him a copy of the warrant. A search of the house produced evidence of drug sales.

The agents discovered a substance they believed to be methamphetamine. Part of the substance was found on defendant's person. Another portion was

discovered on a garage shelf. The majority of the substance was discovered in the garage hidden in a phony oil can. John Yoshida, a criminalist with the Modesto Crime Lab, tested the substance and determined that it was methamphetamine. A total of 35.74 grams was seized at defendant's residence.

The agents also found and seized a large quantity of marijuana in several places in defendant's home and garage. Agent Garza tested the suspected marijuana and determined the substance seized was marijuana. Approximately 395.26 grams were discovered at defendant's residence.

In addition to the drugs, the agents found scales, mannitol, which is a substance used to mix with a narcotic to make a larger supply, and several tote sheets, which are records of drug sale transactions.

The affidavit supporting the search warrant served on defendant was sworn out by Ron Plants, a deputy sheriff with the Stanislaus County Sheriff's Department. In the affidavit, Deputy Plants first set out his educational training and background in narcotics investigation. He then stated he had reasonable cause to believe that evidence presently would be found at defendant's residence that would establish violations of Health and Safety Code sections 11377 and 11378 and Penal Code section 496.

Deputy Plants stated he had been involved in an undercover narcotics investigation at the home of Keith Allen Russell in Modesto. On March 10, 1983, he sought to purchase two ounces of methamphetamine from Russell. While at Russell's home, Russell received a call from a person named "Olie," later identified as Dennis Ramirez Lopez. After this call, Russell informed Plants that he could only sell Plants one and one-half ounces of methamphetamine because his connection could not supply more than that. During their negotiations, Russell told Plants that a person named Uncle Ray was responsible for dealing most of the methamphetamine or "crank," and that Uncle Ray lived in Waterford.

Russell and Plants then drove to another location to complete their deal and, on the drive, Russell repeated that Uncle Ray was "good for a lot of dope" and that Uncle Ray frequently traded stolen property for methamphetamine. At the close of Deputy Plants' operation, Keith Russell, Dennis Lopez and Jerry Lee Cole were arrested for conspiracy and sales of methamphetamine. After Russell was arrested, he told another agent that he was simply a "go-for" and that "The main guy is a guy named 'Ray' out of Waterford."

A search pursuant to a warrant was made of Russell's home. An address book was found that contained the name of Uncle Ray Aho, his address in

Waterford and his phone number. On March 11, 1983, Deputy Plants contacted Officer Fenn from the Waterford Police Department. Officer Fenn had been informed by an untested source that Uncle Ray Aho was "trading a lot of stolen property for dope" and relayed this information to Deputy Plants.

Deputy Plants confirmed that the address and phone number found at Russell's home belonged to a Raymond W. Aho. Plants also stated that Raymond Aho had an arrest record for possession of marijuana, possession of dangerous drugs, possession of a concealed weapon, possession of a dangerous weapon and attempted burglary. Aho had been convicted of possession of marijuana and possession of a concealed weapon.

Deputy Plants concluded the affidavit by stating that in his experience, a person involved in drug sales and stolen property normally keeps controlled substances and stolen property in his car or his home. Plants requested a warrant authorizing a search of the residence, grounds and outbuildings located at defendant's residence, defendant's person and any vehicles registered to defendant.

A judge issued the warrant on March 11, 1983.

I

### THE SEARCH WARRANT WAS SUPPORTED BY PROBABLE CAUSE

After the preliminary hearing, defendant filed a motion to suppress evidence pursuant to Penal Code section 1538.5. Defendant claimed the affidavit supporting the search warrant failed to meet the two-pronged test established by *Aguilar* v. *Texas* (1964) 378 U.S. 108, 114 [12 L.Ed.2d 723, 84 S.Ct. 1509] and refined in *Spinelli* v. *United States* (1969) 393 U.S. 410, 415-416 [21 L.Ed.2d 637, 89 S.Ct. 584].)[1] The trial court denied the motion, relying on *Illinois* v. *Gates, supra,* 462 U.S. 213 (76 L.Ed.2d 527, 103 S.Ct. 2317). Defendant contends the trial court's decision to uphold the warrant was erroneous.

In *In re Lance W.* (1985) 37 Cal.3d 873 [210 Cal.Rptr. 631, 694 P.2d 744], the Supreme Court of California held that article I, section 28, subdivision (d), added to the California Constitution by the adoption of Proposition 8 in June 1982, was intended to permit exclusion of relevant, but unlawfully obtained evidence, only if exclusion is required by the United

---

[1]Defendant also objected to the manner in which the search warrant was executed; however, the resolution of this issue against defendant is not raised in this appeal.

States Constitution. The United States Supreme Court in *Gates* recently articulated the magistrate's duty in finding that a search warrant is supported by probable cause: "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." (*Illinois* v. *Gates, supra,* 462 U.S. at p. 238 [76 L.Ed.2d at p. 548, 103 S.Ct. at p. 2332].)

In approving the totality of the circumstances approach, the *Gates* court overruled the two-pronged *Aguilar-Spinelli* test. The two-pronged test required that before a search warrant could issue on the basis of an informant's tip, the affidavit had to include facts showing the informant's credibility or reliability and the basis of his knowledge. (*Aguilar* v. *Texas, supra,* 378 U.S. at p. 114 [12 L.Ed.2d at p. 729, 84 S.Ct. at p. 1514]; *Spinelli* v. *United States, supra,* 393 U.S. at pp. 415-416 [21 L.Ed.2d at pp. 642-643, 89 S.Ct. at pp. 588-589]; *People* v. *Campa* (1984) 36 Cal.3d 870, 879-880 [206 Cal.Rptr. 114, 686 P.2d 634].) The *Gates* court noted that the probable-cause standard is a "practical, nontechnical, conception." It concluded that the rigid two-pronged test was simply not suitable for testing probable cause. (*Illinois* v. *Gates, supra,* 462 U.S. at p. 231 [76 L.Ed.2d at p. 544, 103 S.Ct. at p. 2328].)

The court discussed at length the totality of the circumstances approach. The approach "permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip . . . ." (*Gates, supra,* 462 U.S. at p. 234 [76 L.Ed.2d at p. 545, 103 S.Ct. at p. 2330].) The two prongs of the *Aguilar-Spinelli* test may still be used in testing probable cause; however, the informant's veracity and basis of knowledge are now only "relevant considerations in the totality-of-the-circumstances analysis . . . a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." (*Illinois* v. *Gates, supra,* 462 U.S. at p. 233 [76 L.Ed.2d at p. 545, 103 S.Ct. at p. 2329].)

The court also presented two types of affidavits that would not support a finding of probable cause. A sworn statement of an affiant that he has cause to suspect and believes criminal activity is taking place on certain premises will not be sufficient. (*Gates, supra,* 462 U.S. at pp. 238-239 [76 L.Ed.2d at pp. 548-549, 103 S.Ct. at p. 2332].) Also, a statement that the affiant has reliable information from a credible person and believes drugs are located at a home would be inadequate. (*Ibid.*) The court noted the requirement still exists that "Sufficient information must be presented to the mag-

istrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." (*Ibid.*)

■ The court also discussed the standard of review of a magistrate's determination of probable cause. The reviewing court must pay great deference to a magistrate's finding of probable cause. A trial de novo should not be held on appeal. "[T]he traditional standard for review of an issuing magistrate's probable-cause determination has been that so long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." (*Illinois* v. *Gates, supra,* 462 U.S. at p. 236 [76 L.Ed.2d at p. 547, 103 S.Ct. at p. 2331].)

We, therefore, must test the affidavit of Deputy Plants under the totality-of-the-circumstances approach set forth in *Gates* to determine whether probable cause existed for the issuance of the search warrant.

■ While working in an undercover capacity, Deputy Plants was negotiating with Russell to purchase two ounces of methamphetamine. During these negotiations, Russell told Deputy Plants that the person dealing most of the "crank" was "Uncle Ray" who lives in Waterford; that "Uncle Ray" in Waterford was "the big connection," "was good for a lot of dope" and that "Uncle Ray" frequently traded stolen property for methamphetamine.

■ These statements by Russell must be presumed reliable since they were unwittingly made to an undercover police officer. (*People* v. *Fleming* (1981) 29 Cal.3d 698, 708 [175 Cal.Rptr. 604, 631 P.2d 38].) Such "utterances by a suspected accomplice can be presumed to be reliable in these circumstances since they 'were not made for the selfish purpose of currying favor with law enforcement to mitigate the punishment of [the individual's] own criminal acts, or with the ulterior motive of causing the arrest of the petitioner upon a false accusation.' " (*Ibid.; Ming* v. *Superior Court* (1970) 13 Cal.App.3d 206, 214 [91 Cal.Rptr. 477].)

■ Russell's statements to Deputy Plants were corroborated by his later statement to agent Mann that "Those two other guys that your [*sic*] arrested are just two go-fors, like me. The main guy is a guy named 'Ray' out of Waterford." Further corroboration of Russell's statements is found in information provided to Deputy Plants by Officer Fenn of the Waterford Police Department that an untested source had stated that Uncle Ray Aho was "trading a lot of stolen property for dope." ■ The California Supreme Court has noted that ". . . there may be circumstances where corroborative information from separate, unrelated sources will thereby es-

tablish its credibility . . . ." (*People* v. *Fein* (1971) 4 Cal.3d 747, 753 [94 Cal.Rptr. 607, 484 P.2d 583].) Furthermore, case law holds that "Corroboration is not limited to a given form but includes within its ambit any facts, sources, and circumstances which reasonably tend to offer independent support for information claimed to be true." (*People* v. *Levine* (1984) 152 Cal.App.3d 1058, 1065 [199 Cal.Rptr. 756].) ▮ Additional corroboration of Russell's information concerning defendant's identity and residence in Waterford was provided by the finding of defendant's name, address and telephone number in an address book in Russell's apartment following Russell's arrest and the subsequent investigation confirming defendant's identity, address and telephone number.

▮ Defendant contends that his arrest and conviction record included in the affidavit is irrelevant and stale and should not be considered. Under California law, a suspect's narcotic arrest record always has been considered relevant to the magistrate's determination of probable cause. (*People* v. *Kershaw* (1983) 147 Cal.App.3d 750, 760 [195 Cal.Rptr. 311]; *People* v. *Childress* (1979) 99 Cal.App.3d 36, 41 [160 Cal.Rptr. 47]; *People* v. *Scott* (1968) 259 Cal.App.2d 268, 276 [66 Cal.Rptr. 257].) The defendant's arrest and conviction record is no less relevant under the totality-of-the-circumstances test.

Defendant further contends that even if probable cause existed to believe he was engaged in criminal activity, the affidavit was insufficient to justify the search of his home.

▮ In his affidavit in support of the search warrant, Deputy Plants detailed his training and experience as a narcotics investigator. He further stated that in his experience as a narcotics detective persons dealing in controlled substances and stolen property will frequently secrete contraband in closed or locked containers and other closed or locked hiding places within their residence and motor vehicles. In *People* v. *Johnson* (1971) 21 Cal.App.3d 235 [98 Cal.Rptr. 393], police conducted a search of an apartment defendant had rented for one month. The search revealed large quantities of drugs and a fully loaded machine gun. A search warrant for defendant's permanent residence was sought. The affidavit contained the results of the first search, a statement by one officer that he knew defendant was a major supplier of drugs, and another officer's statement that his experience in the field provided him with knowledge of drug dealers' methods of operation. The latter officer stated he believed a quantity of drugs would be found at defendant's residence in addition to the drugs found at the apartment. (*Id.*, at p. 243.) The court held this belief was reasonable and upheld the search warrant.

Similarly, in the case at bench, Deputy Plants' statements and belief based upon his training and experience were reasonable and, taken together with the other information in the affidavit as noted above, adequately support the magistrate's conclusion of probable cause to believe that evidence of defendant's criminal activity, i.e., drugs or stolen property, would be found within defendant's residence.

II*

### THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING PROBATION

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

The judgment is affirmed.

Franson, Acting P. J., and Martin, J., concurred.

A petition for a rehearing was denied May 15, 1985, and appellant's petition for review by the Supreme Court was denied August 1, 1985.

---

*See footnote on page 984, *ante*.