[No. B043992. Second Dist., Div. Seven. July 9, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
WILFREDO BATOON TUADLES et al., Defendants and Appellants.

1778

**COUNSEL**

Stuart B. Esner and Jolene Larimore, under appointments by the Court of Appeal, for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Acting Assistant Attorney General, David F. Glassman and Donald E. de Nicola, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**WOODS (Fred), J.**—Convicted by jury of possession of marijuana for sale (Health & Saf. Code, § 11359), appellant Jude Jusus Mercado challenges the sufficiency of a search warrant affidavit and appellant Wilfredo Batoon Tuadles claims the trial court should have instructed, sua sponte, on "innocent possession." We find no error and affirm.

### Procedural and Factual Background

In December 1988 a narcotics officer obtained a search warrant for three residences: Tuadles's apartment, a vacant apartment in the same building beneath Tuadles's apartment, and appellant Mercado's residence. Pursuant to the warrant marijuana, $5,700 in cash, and narcotics paraphernalia were recovered. Tuadles and Mercado were jointly charged with possession of marijuana for sale. In superior court Mercado moved to suppress marijuana found at his home.[1] The motion was denied. A jury convicted both appellants.

### Discussion

#### I.

Except for the narrow instructional issue raised by Tuadles, which we separately consider, the events of the trial are irrelevant to this appeal.

Dispositive of Mercado's appeal is a pretrial event, the issuance of a search warrant. If the magistrate correctly found probable cause for its issuance then Mercado's conviction must be affirmed.

A. *The search warrant affidavit*[2]

The magistrate issued a warrant to search appellant's residence (18813 Sabrina Ave., Cerritos, California) based upon the 10-page affidavit of Officer Roberts. We summarize that affidavit.

Officer Roberts had been a Long Beach police officer for seven years and was assigned to that department's drug investigation section. His drug

---

[1] Mercado's "Motion to Quash/Traverse Search Warrant" moved the court only to "suppress evidence to wit: Marijuana, found at the Defendant's home . . . ." The motion failed to cite Penal Code section 1538.5, the exclusive remedy prior to conviction to test the reasonableness of a search (Pen. Code, § 1538.5, subd. (m)) and did not specify the suppression of either the $5,700 in cash or his inculpatory statements. (See Cal. Judges Benchbook, Search and Seizure (1991) § 1.67, p. 51.)

[2] Mercado did not claim in the superior court, and does not claim on appeal, that the affidavit contains any false or reckless statements or material omissions.

trafficking training and experience consisted of the following: attendance at the Long Beach Police Academy and Department of Justice Narcotics Officers' School where he studied the recognition, packaging, sales, and possession for sale of drugs; 200 hours of additional advanced narcotic trafficking training; specialized training by the Department of Justice in the recognition of clandestine phencyclidine (PCP) and methamphetamine laboratories; work as an undercover officer, purchasing narcotics and becoming familiar with its sale and packaging for sale; hours spent with narcotic traffickers and users discussing the safest way to package, conceal, use, and sell narcotics; work with other narcotic experts with whom he discussed narcotic packaging and transfer methods used by traffickers in the Southern California area; teaching the recognition of marijuana in its cultivation and processing stages; testifying as an expert witness regarding the possession, possession for sale and sale of controlled substances; serving dozens of search warrants; and for the past 10 months exclusively "investigating narcotic traffickers on a national level including smugglers, financiers, and top level distributors."

On November 14, 1988, Officer Roberts received information from a Drug Enforcement Administration (DEA) special agent in North Carolina that a rattan end table shipped from the Philippines had been delivered, apparently by mistake, to Greensboro, North Carolina. There, a local police officer intercepted the table and discovered that it contained approximately 12 pounds of marijuana. The table should have been shipped and delivered to Fred Tuadles, 63 East 69th Way, #B, Long Beach, California, 90805. The shipping instructions, in addition to containing the name and address of the intended deliveree, also contained a telephone number: 213-924-2754. A person who identified himself as Fred Tuadles had "made telephone calls [to Greensboro] concerning the whereabouts of the table" and gave 213-924-2754 "for call backs regarding the table."

The DEA agent told Officer Roberts he would ship the table to him so Officer Roberts could arrange "a controlled delivery" to Fred Tuadles.

Officer Roberts ran a computer check and confirmed that a Wilfredo Batoon Tuadles had a California driver's license with a 63 East 69th Avenue, Long Beach address and that utilities at that address were in his name.

Officer Roberts contacted the General Telephone Company concerning telephone number 213-924-2754 and learned it was an unpublished number. He then obtained a search warrant[3] for subscriber information and was informed the number returned "to an address of 18813 Sabrina Avenue, Cerritos, California, 90701" and the subscriber was Jude Mercado.

---

[3]The validity of this search warrant is not contested on appeal.

On November 15, 1988, Officer Roberts went to the Tuadles apartment house and saw a Mazda pickup in the driveway. He made a record check of its license number. It was registered to Wilfredo B. Tuadles or Pepito S. Llido, 11214 Linares Street, San Diego, California.

During the week of November 28—December 2, 1988, Officer Roberts received the rattan end table. In it was a vehicle inner tube containing approximately 12 pounds of marijuana. He photographed, specially sprayed, and reboxed the table and contents.

On December 5, 1988, another officer posing as a United Parcel Service (UPS) delivery driver attempted to deliver the table. As he approached apartment B an unidentified man, who appeared to reside in apartment B, told him that Fred Tuadles no longer lived there, that he had moved to apartment A, directly below. He also stated that Tuadles owned a factory in San Diego and returned from work at about 6:30 p.m. The "UPS driver/" officer told the man he would return tomorrow, December 6, and attempt delivery.

On December 6, 1988, Officer Roberts again checked the utility records for 63 East 69th Way. They showed Wilfredo Tuadles as the account holder and apartment A as vacant.

The affidavit also stated that according to Officer Roberts' training and experience, large scale drug traffickers maintain records of their transactions including pay and owe records, customer lists with addresses and phone numbers, and similar identifying information concerning confederates. Further, that "it is common for these large scale organizations to use various locations to serve different functions." One location may be used to store lesser quantities of narcotics and/or money, another to meet customers, a third to "stash" narcotics. Such separate locations also serve to avoid detection by law enforcement and theft by other narcotic traffickers or users.

Finally, the affidavit contained Officer Roberts' opinion that "[b]ased on the . . . facts . . . in this affidavit [he] believe[d] that the residence at 63 East 69th Way, Apartment #B, Long Beach, California and at 18813 Sabrina Avenue, Cerritos, California are being used to store contraband, money, paraphernalia, and drug records."

B. *Legal definition of probable cause*

■ As we stated in *People* v. *Terrones* (1989) 212 Cal.App.3d 139, 146 [260 Cal.Rptr. 355]: "The standard by which a magistrate must determine whether an affidavit is sufficient to establish probable cause . . . is explained in *Illinois* v. *Gates* (1983) 462 U.S. 213, 238-239 [76 L.Ed.2d 527,

548, 103 S.Ct. 2317]: 'The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a *fair probability* that contraband or evidence of a crime will be found in a particular place.'" (Italics added.)

■ Probable cause "is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." (*Illinois* v. *Gates* (1983) 462 U.S. 213, 232 [76 L.Ed.2d 527, 544, 103 S.Ct. 2317].) It is less than proof beyond a reasonable doubt (*id.* at p. 235 [76 L.Ed.2d at p. 546]); less than a preponderance of the evidence (*ibid.*); and less than a prima facie showing (*ibid.*).

Probable cause is a "particularized suspicion" (*Texas* v. *Brown* (1983) 460 U.S. 730, 742 [75 L.Ed.2d 502, 513-514, 103 S.Ct. 1535]; it is "facts that would lead a man of ordinary caution . . . to entertain . . . a *strong suspicion* that the object of the search is in the particular place to be searched" (*Wimberly* v. *Superior Court* (1976) 16 Cal.3d 557, 564 [128 Cal.Rptr. 641, 547 P.2d 417], italics added); "probable cause requires only a . . . substantial chance." (*Illinois* v. *Gates, supra*, 462 U.S. at p. 243, fn. 13 [76 L.Ed.2d at p. 552].)

C. *Probable cause: role of magistrate*

■ "The essential protection of the warrant requirement of the Fourth Amendment" relies upon "a neutral and detached magistrate." (*Illinois* v. *Gates, supra*, 462 U.S. at p. 240 [76 L.Ed.2d at p. 549].) The magistrate acts as a trier of fact in appraising and weighing the affidavit. (*People* v. *Stout* (1967) 66 Cal.2d 184, 193 [57 Cal.Rptr. 152, 424 P.2d 704].) He may reject an affidavit as not credible or not sufficient. He may also "before issuing the warrant, examine on oath the person seeking the warrant and any witnesses he may produce . . . ." (Pen. Code, § 1526, subd. (a).)

■ "A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" (*Illinois* v. *Gates, supra*, 462 U.S. at p. 236 [76 L.Ed.2d at p. 547].)

D. *Standard of review*

In reviewing the issuance of a search warrant "[a]ll we are . . . asked to decide is whether the [magistrate] acted properly, not whether [the police officer] did." (*Jones* v. *United States* (1960) 362 U.S. 257, 271-272 [4

L.Ed.2d 697, 708, 80 S.Ct. 725, 78 A.L.R.2d 233], overruled on other grounds in *United States* v. *Salvucci* (1980) 448 U.S. 83, 84 [65 L.Ed.2d 619, 623, 100 S.Ct. 2547].) Our determination is *not* based upon a de novo review. (*Illinois* v. *Gates, supra,* 462 U.S. at p. 236 [76 L.Ed.2d at pp. 546-547]; *People* v. *Terrones, supra,* 212 Cal.App.3d 139, 149.)

Our task, as a reviewing court, is to determine whether "the magistrate had a 'substantial basis for . . . conclud[ing]' that a search warrant would uncover evidence of wrongdoing." (*Illinois* v. *Gates, supra,* 462 U.S. at p. 236 [76 L.Ed.2d at p. 547].) " '[A]ll conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged to uphold the findings of the [magistrate] if possible.' " (*People* v. *Superior Court (Johnson)* (1972) 6 Cal.3d 704, 715-716 [100 Cal.Rptr. 319, 493 P.2d 1183] (dis. opn. of Tobriner, J.).) Moreover, doubtful or marginal cases should be resolved in favor of upholding the warrant. (*United States* v. *Ventresca* (1965) 380 U.S. 102 [13 L.Ed.2d 684, 85 S.Ct. 741]; *People* v. *Superior Court (Corona)* (1981) 30 Cal.3d 193, 207 [178 Cal.Rptr. 334, 636 P.2d 23].)

E. *Did the magistrate have a "substantial basis" for issuing the search warrant?*

■ In assessing the affidavit's facts it is possible to imagine "[s]ome innocent explanation . . . . But '[t]he possibility of an innocent explanation does not deprive the [magistrate] of the capacity to entertain a reasonable suspicion . . . .' " (*People* v. *Kershaw* (1983) 147 Cal.App.3d 750, 759-760 [195 Cal.Rptr. 311].)

"Reasonable suspicion" may be based not only upon the circumstances and conduct recited in the affidavit but also upon the affiant's interpretation of and opinion about those circumstances and conduct. " 'Circumstances and conduct which would not excite the suspicion of the man on the street might be highly significant to an officer who had had extensive training and experience in the devious and cunning devices used by narcotics offenders to conceal their crimes.' " (*People* v. *Johnson* (1971) 21 Cal.App.3d 235, 244 [98 Cal.Rptr. 393].) Officer Roberts, the affiant, had extensive narcotic trafficking training and experience and "the magistrate could legitimately consider [his opinions] in determining probable cause for the search." (*People* v. *Kershaw, supra,* 147 Cal.App.3d 750, 760; see also *People* v. *Aho* (1985) 166 Cal.App.3d 984 [212 Cal.Rptr. 686]; *People* v. *Johnson, supra,* 21 Cal.App.3d 235, 243; *United States* v. *Cortez* (1981) 449 U.S. 411, 418 [66 L.Ed.2d 621, 629, 101 S.Ct. 690] [". . . a trained officer draws inferences and makes deductions . . . that might well elude an untrained person."].)

■ We conclude there is a "substantial basis" for the magistrate's finding of probable cause[4] to issue the instant search warrant. Among the circumstances constituting this "substantial basis" are the following: the manner of shipment, the amount of marijuana, and the shipping distance indicate large-scale, sophisticated narcotics trafficking; use of Mercado's residence telephone number as a "call back" indicates that location was Tuadles's "second home" or a trusted confederate lived there; large scale traffickers commonly use two, three or more residences for their activities; on December 5, 1988, an unidentified person who appeared to reside at 63 East 69th Way, apartment B (the original delivery address) told an officer posing as a UPS deliveryman that Tuadles no longer lived there but had moved to apartment A; apartment A was vacant; by December 5, 1988, Tuadles and/or his confederates could reasonably expect UPS to "call back" Mercado's telephone number for delivery instructions; it was the opinion of an experienced, well-trained narcotics officer-expert that narcotics, money, records, and paraphernalia were present in Mercado's residence. (Cf. *People v. Spears* (1991) 228 Cal.App.3d 1 [278 Cal.Rptr. 506]; *United States v. Malin* (7th Cir. 1990) 908 F.2d 163; *People v. Johnson, supra*, 21 Cal.App.3d 235; *People v. Garnett* (1970) 6 Cal.App.3d 280 [85 Cal.Rptr. 769]; *People v. Lundy* (1969) 2 Cal.App.3d 939 [82 Cal.Rptr. 815]; *People v. Stout, supra*, 66 Cal.2d 184.)

## II.

■ To possess an unlawful drug solely for the purpose of disposal is not criminal. (*People v. Mijares* (1971) 6 Cal.3d 415 [99 Cal.Rptr. 139, 491 P.2d 1115].) Appellant Tuadles contends the trial court, sua sponte, should have so instructed the jury. He is mistaken. There was no evidence of such purpose. Tuadles testified he was going to drop the marijuana off to someone, *not* that he was going to dispose of it.

### DISPOSITION

The judgments are affirmed.

Lillie, P. J., concurred.

JOHNSON, J.—I concur in the affirmance of Tuadles's conviction but I respectfully dissent from the affirmance of Mercado's. In my view the affidavit did not establish probable cause for the search of Mercado's home and a reasonable, well-trained police officer would have known this.

---

[4]Accordingly, we have no occasion to consider the *Leon* "good faith" exception to the exclusionary rule. (*United States v. Leon* (1984) 468 U.S. 897 [82 L.Ed.2d 677, 104 S.Ct. 3405]; see *People v. Camarella* (1991) 54 Cal.3d 592 [286 Cal.Rptr. 780, 818 P.2d 63].)

Because the search warrant has produced the intended result or the case would not be here, it is always tempting to find probable cause by reasoning backward from the seizure of the evidence to the contents of the affidavit. We can then credit discovery of the damning evidence not to a hunch but to the officer's "extensive training and experience"; not to just a guess but to "inferences and deductions" which are clear to police officers but often "elude an untrained person" such as an appellate court justice.

Often, in a good murder mystery, the identity of the killer eludes the reader until the last chapter. Then, when the killer is unmasked at the very end, the clues the author has dropped along the way suddenly become crystal clear. Similarly, in the case of a search warrant, it is only because the court knows the denouement in advance that it can look back at the affidavit and pick out the facts which provided the magistrate a substantial basis for concluding the search would uncover evidence of wrongdoing.

In my view, judges are not supposed to start with the denouement and work backward to find probable cause. Rather, we are supposed to determine whether, from all the circumstances set forth in the affidavit, the magistrate, who did not know what the end result would be, had a substantial basis for concluding probable cause existed for a search. The language of the Fourth Amendment clearly prohibits the working-backward method of establishing probable cause. It provides, "no warrants shall *issue*, but upon probable cause." It does not provide, "no warrants shall be *upheld* but upon probable cause."

Looking at all the circumstances set forth in the affidavit in the present case, and with due regard for the officer's training and experience and the reasoning of the majority opinion, probable cause for the search of Mercado's home continues to elude me. The affidavit and the majority opinion place far too much emphasis on Officer Roberts's training and experience and far too little emphasis on the facts known and unknown at the time the warrant issued. For the reasons set forth below, I conclude the affidavit failed to establish probable cause for the search and, further, no reasonable, well-trained police officer could have believed it did.

I. THE AFFIDAVIT FAILED TO ESTABLISH PROBABLE CAUSE TO SEARCH MERCADO'S HOME.

The affidavit in support of the search warrant for Mercado's home contained the following facts.

After relating his training and experience in narcotics investigation, Officer Roberts stated he was contacted by an agent of the federal Drug

Enforcement Agency (DEA) in North Carolina who told him the DEA was in possession of a rattan end table in which 12 pounds of marijuana were secreted. The shipping label on the outside of the container was addressed to Fred Tuadles at an address on 69th Way in Long Beach, California. The shipping label also contained a telephone number. The DEA told Officer Roberts a person identifying himself as Fred Tuadles had called a warehouse in North Carolina concerning the shipment and gave the telephone number on the shipping label as the number for callbacks regarding the shipment. Noting the telephone number was not a Long Beach number, Officer Roberts obtained a search warrant for telephone company records to determine where the telephone was located.[1] He discovered the telephone number was listed to Jude Mercado in the city of Cerritos.

A check of Department of Motor Vehicles and utility records revealed utilities at the Long Beach address—but not the Cerritos address—were in Tuadles's name. The truck parked at the Long Beach address *was* registered to Tuadles but at an address in San Diego.

The DEA shipped the package containing the table to Officer Roberts who confirmed it held marijuana. Officer Roberts arranged a controlled delivery of the table to Tuadles at the Long Beach address and applied for a search warrant to search the Long Beach and Cerritos locations. In addition to the above facts, the affidavit expressed Officer Roberts's opinion, based on his experience in narcotics investigations, that drug dealers often use various locations to keep drugs, money and records of drug transactions and that the Long Beach and Cerritos locations were being used for those purposes.

"The standard by which a magistrate must determine whether an affidavit is sufficient to establish probable cause for issuance of a search warrant is explained in *Illinois* v. *Gates* (1983) 462 U.S. 213, 238-239 [76 L.Ed.2d 527, 548, 103 S.Ct. 2317]: 'The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.'" (*People* v. *Terrones* (1989) 212 Cal.App.3d 139, 146 [260 Cal.Rptr. 355].)

Although Officer Roberts submitted a 10-page affidavit with his request for a warrant to search Mercado's residence the affidavit boils down to just

---

[1]This warrant is not challenged on appeal.

2 factors to justify the warrant: (1) Mercado's home telephone number was on the shipping label for the table containing the marijuana; (2) a person identifying himself as Fred Tuadles made telephone calls from *some* telephone concerning the whereabouts of the furniture and left Mercado's telephone number for callbacks regarding shipment of the table. From this Officer Roberts concluded there was a fair probability narcotics or evidence of narcotics trafficking would be found at Mercado's residence because "persons who traffick in large amounts of contraband will use several houses and residences in order to keep drugs, money, and records."

Mercado does not challenge Officer Roberts's expertise as a narcotics investigator or his opinion narcotics traffickers often use various locations to store drugs, money and records. Rather, he contends the facts in this case did not amount to probable cause to believe *he* was a narcotics trafficker or that evidence of narcotics trafficking would be found in *his* residence.

A. *Probable Cause Is Lacking Because the Affidavit Fails to Show a Connection Between the Mercado Residence and Drug Trafficking.*

Mere evidence of a suspect's guilt provides no cause to search his residence. (*People v. Gonzalez* (1990) 51 Cal.3d 1179, 1206 [275 Cal.Rptr. 729, 800 P.2d 1159].) The courts have recognized, however, that from the nature of the crime and the items sought, a magistrate can reasonably conclude that a suspect's residence is a logical place to look for evidence. (*Ibid.*) For example, numerous cases have held if there was probable cause to believe the defendant was dealing drugs there was probable cause to believe drugs or other evidence of such criminal activity would be found in defendant's residence even where there was no evidence defendant was dealing drugs from that residence. (See, e.g., *People v. Koch* (1989) 209 Cal.App.3d 770 [257 Cal.Rptr. 483]; *People v. Aho* (1985) 166 Cal.App.3d 984 [212 Cal.Rptr. 686]; *People v. Johnson* (1971) 21 Cal.App.3d 235 [98 Cal.Rptr. 393].) The critical factor in all these cases—the factor missing from the present case—was that the police had probable cause to believe the specific defendant whose residence was to be searched was himself involved in the narcotics traffic.

In *People v. Johnson, supra,* the police, acting on information from a citizen informant, obtained a search warrant for an apartment rented by defendant for just one month. In the apartment they found large quantities of lysergic acid diethylamide (LSD) and amphetamine and paraphernalia for packaging and using narcotics. There was no evidence the apartment was being used for living purposes. When defendant entered the apartment with a key he was arrested. The officers then obtained a search warrant for

defendant's residence. The Court of Appeal found probable cause for a warrant to search the residence based on two factors: (1) from the evidence found in the unoccupied apartment "a reasonable layman, let alone an experienced police officer, would have been justified in believing that defendant was a large scale trafficker in illicit drugs"; (2) "the officer related that his experience in the field had provided him with knowledge of the habits and modus operandi of suppliers of illegal drugs . . . [and] that such persons routinely maintain their major stockpile away from their residence and a smaller quantity at or near their residence for the purpose of immediate sale." (*Johnson, supra,* 21 Cal.App.3d at pp. 242-243.)

In *People* v. *Aho, supra,* there was probable cause to believe defendant was the source of methamphetamine based on statements from reliable informants and the finding of defendant's name, address and telephone number in the address book of an individual who was arrested for selling metamphetamine and who identified defendant as his supplier. The court found these facts plus the officer's expert opinion persons dealing narcotics frequently hide their contraband in their homes provided probable cause for a warrant to search defendant's residence. (166 Cal.App.3d at pp. 991-993.)

In *People* v. *Koch, supra,* the police stopped the truck in which defendant was a passenger because the driver was driving erratically. Inside the cab of the truck the officers discovered five bindles containing heroin; "a spoon with heroin and a dissolving agent were observed on the passenger's floorboard; two hypodermic syringes were discovered beneath the driver's seat; there was a loaded handgun and a calculator in the pickup; and most importantly, a leather bag that defendant claimed was his and which contained $3,605 as well as documents bearing the names of defendant . . . and a notebook with notations commonly associated with drug transactions." The court found "[t]hese facts admit to but one reasonable conclusion—at the very least defendant . . . was trafficking in narcotics." Furthermore, the court found, given the officer's "unchallenged expertise in narcotics investigation . . . his conclusion that because defendant was a trafficker in illegal drugs his residence was a likely depository for more contraband or evidence was likewise reasonable under all the circumstances." (209 Cal.App.3d at pp. 778-780.)

In the present case, the police had a reasonable basis for believing *Tuadles* was a drug trafficker but no reasonable basis to believe *Mercado* was a drug

trafficker. There was no evidence linking Mercado to the Tuadles's apartment. (Cf. *People* v. *Johnson, supra,* 21 Cal.App.3d at pp. 240-243.)[2] Tuadles did not name Mercado as his supplier of narcotics. (Cf. *People* v. *Aho, supra,* 166 Cal.App.3d at pp. 991-993.) Mercado had not been arrested in possession of narcotics or items associated with drug transactions. (Cf. *People* v. *Koch, supra,* 209 Cal.App.3d at pp. 778-781.) Furthermore, there was no surveillance at Mercado's residence to determine if activity consistent with drug trafficking was taking place. Nor was there any evidence Mercado had previously been arrested for any drug-related offense. (Cf. *People* v. *Kershaw* (1983) 147 Cal.App.3d 750, 759-760 [195 Cal.Rptr. 311].) Although the police had Mercado's telephone number, they made no attempt to monitor calls to and from that number for evidence of drug transactions. (Cf. *People* v. *Rochen* (1988) 203 Cal.App.3d 684, 689 [250 Cal.Rptr. 73].) Because there was no evidence *Mercado* was a drug trafficker the fact drug traffickers often store drugs and items used in drug dealings in their homes is irrelevant to establishing probable cause to search *Mercado's* residence.

Even though there was no evidence Mercado was a drug trafficker, there was sufficient evidence to believe Tuadles was engaged in drug trafficking and that evidence of such activity would be found at Tuadles's apartment on 69th Way in Long Beach. (Cf. *People* v. *Superior Court* (1972) 27 Cal.App.3d 404-411 [103 Cal.Rptr. 874].) In addition, there was evidence Tuadles was using a telephone number which presently belonged to the Mercado residence to receive information regarding the drug shipment. Finally, there is Officer Roberts's opinion, based on his experience, drug traffickers often use "multiple locations" to keep drugs, money and records. The question is whether these facts add up to probable cause to believe drugs or evidence of drug-related activity would be found at Mercado's residence. I conclude they do not.

Probable cause is lacking because the affidavit fails to show evidence the Mercado residence was in any way connected to Tuadles except for the telephone number on the package. The evidence falls far short of establishing a "fair probability" Tuadles was in fact using Mercado's residence for any drug-related activity. In contrast, in *People* v. *O'Leary* (1977) 70 Cal.App.3d 323 [138 Cal.Rptr. 667], there was evidence of drug trafficking from multiple locations.

In *O'Leary*, marijuana was found in a box en route from Thailand to an Oakland address where the utilities were registered to defendant. Two weeks

---

[2]At the time of his arrest, Tuadles told Office Roberts that Mercado was his landlord. This fact, however, was not known to Roberts at the time he prepared the affidavit for the search.

later a similar box, also containing marijuana, was intercepted en route from Thailand to a second Oakland address where the telephone was listed under defendant's name. The police officer's experience led him to believe the defendant was trafficking drugs from two separate addresses, which were listed in utility and telephone records under defendant's name. The court held there was probable cause for the issuance of a search warrant. (70 Cal.App.3d at p. 330.) The court reasoned that the police officer's affidavit contained substantial evidence from which the magistrate could reasonably conclude defendant was in the business of drug trafficking and was conducting his business from the two separate addresses. (*Id.* at p. 329.)

In the present case, the only facts connecting Mercado's residence to drug sales were the facts Mercado's residence telephone number appeared on the shipping label and someone using Tuadles's name (*not* Mercado's) had asked to be called at that number when the container was shipped. There is no evidence Tuadles owned or had any authority over the Mercado residence. Unlike *O'Leary*, *supra*, there was no evidence any of the utilities at Mercado's residence were in Tuadles's name.

In denying the motion to suppress, the trial court reasoned, "It's highly unlikely that anybody is going to give a return phone number as a callback for inquiries involving a substantial quantity of contraband . . . [if] that, in fact, is not a number that they can be reached at." Although I agree with the trial court's reasoning, it only shows someone at the Mercado residence knew Tuadles and agreed to take messages for him. There is no evidence any of the calls to North Carolina regarding the shipment containing the marijuana were placed from the Mercado residence. Nor are there any facts in the affidavit indicating anyone at the Mercado residence knew what was in the shipment Tuadles was expecting. None of Officer Roberts's information suggested Tuadles resided with the Mercados. On the contrary, all the evidence showed Tuadles resided at the 69th Way address in Long Beach.

The mere chance that a drug trafficker is known at a particular location provides no grounds for probable cause to search that location. (*Alexander* v. *Superior Court* (1973) 9 Cal.3d 387 [107 Cal.Rptr. 483, 508 P.2d 1131].) In *Alexander*, the police affidavit for a search warrant revealed defendant was frequently visited in her apartment by a known narcotics dealer. These visits were corroborated by police surveillance. The court held that the affidavit was inadequate to provide probable cause for a search warrant of defendant's residence. The court reasoned frequent visits from a known drug dealer fail to provide a connection between such visits and criminal activity. (*Id.* at p. 391.)

Applying the *Alexander* court's reasoning to the present case and assuming Tuadles would not have left the number if it were not a number at which

he could be reached, there is no probable cause to believe illegal drugs could be found at the Mercado residence just because Tuadles might know someone there or might himself be found there. Additionally, the police failed to determine whether Tuadles had ever been to the Mercado residence, let alone whether he visited it frequently. Because a connection cannot be established between criminal activity and the premises to be searched when the police knew about frequent visits by a drug dealer, (*Alexander, supra*) it necessarily follows the lack of any evidence Tuadles had ever even been to the Mercado residence cannot establish a connection adequate to show probable cause to search Mercado's residence.

B. *Probable Cause Is Lacking Because There Was No Way for the Magistrate to Determine Whether the Information on the Shipping Label Was Fresh or Stale.*

As an additional ground for finding lack of probable cause I note there was no way for the magistrate to determine if the information on the shipping label containing Mercado's telephone number was fresh or stale. (Cf. *People* v. *Mayer* (1987) 188 Cal.App.3d 1101, 1119 [233 Cal.Rptr. 832].) The affidavit states that on November 14, 1988, Officer Roberts was informed by DEA officers in North Carolina that Greensboro police had intercepted the package containing the marijuana and someone using Tuadles's name had called the warehouse where the package was stored and left the telephone number, later identified as Mercado's, for callbacks. The affidavit does not state *when* the package was intercepted by Greensboro police, *how long* it had been in the warehouse before it came to the attention of the Greensboro police or *when* the telephone calls giving Mercado's number were made. For all the magistrate knew, the telephone number on the shipping label and given by the caller to the warehouse no longer belonged to the party it belonged to when used on the label and by the caller. An affidavit failing to make any time references to criminal activity at a particular location is inadequate to sustain a magistrate's determination that criminal activity could be found on the premises at the time the warrant was issued. (*Rodriquez* v. *Superior Court* (1988) 199 Cal.App.3d 1453, 1464 [245 Cal.Rptr. 617].)

C. *There Is No Probable Cause to Search the Mercado Residence Because There Is No Reasonable Belief That the Package Would Ever Arrive at the Mercado Residence.*

Yet another defect in the affidavit exists. There is no evidence to indicate the package would ever arrive at the address of the phone number instead of the address on the shipping label. The telephone number was left for

purposes of callbacks, not as a backup delivery point. The mere leaving of the telephone number for purposes of callbacks (not delivery) by a man claiming to be Tuadles does not establish the requisite nexus between Mercado's residence and criminal activity. This reasoning is supported by *United States* v. *Hendricks* (9th Cir. 1984) 743 F.2d 653, 656.

In *Hendricks*, a customs officer discovered a box containing cocaine addressed to defendant's home. Although the box had defendant's name and address on it, the box was shipped in a manner which required defendant to pick up the box personally. The police obtained a conditional search warrant to be executed only when the box was brought to the premises. The court held that the search warrant was issued without probable cause, reasoning that the agents holding the warrant had no belief the box would ever arrive at defendant's residence. (743 F.2d at p. 655.)

Similarly, in the present case, there was no indication the package would ever arrive at the Mercado residence. The package was addressed to Tuadles at a Long Beach address. The telephone number was registered to a Cerritos address but there was no instruction to send the package to that address. It is reasonable to assume if Tuadles had meant for the package to reach Mercado's residence he would have left the address with the telephone number. The only reasonable conclusion is this package was never intended to arrive at Mercado's residence and, therefore, there is no nexus between the Mercado residence and criminal activity.

Based on the totality of the circumstances reflected in the affidavit, I can only conclude the presence of the Mercado residence telephone number on the shipping label and its use by Tuadles for messages is insufficient to justify a search of the Mercado residence. The affidavit did not contain any evidence the Mercado residence was Tuadles's residence. More important, the affidavit did not contain any evidence Tuadles *had ever been* to the Mercado residence or that anyone at the residence was working with Tuadles in the sale of marijuana. I have found no case holding the officer's experience that drug dealers often use "various locations" to store drugs, money and records by itself provides probable cause to search someone else's residence.

A search warrant may designate more than one person or place to be searched but it "must contain sufficient probable cause to justify its issuance *as to each person or place named therein.*" (*People* v. *Easley* (1983) 34 Cal.3d 858, 870 [196 Cal.Rptr. 309, 671 P.2d 813], italics added.) The fact drug dealers use "various locations" does not provide the police with probable cause to search every location where evidence could conceivably be

found. On the record before us I must conclude the finding of probable cause to search the Mercado residence was not based on facts but on mere speculation. It follows the trial court erred in denying the motion to suppress evidence of the sale of marijuana found in the Mercado residence.

## II. A REASONABLE AND WELL-TRAINED OFFICER WOULD HAVE KNOWN THE AFFIDAVIT FAILED TO ESTABLISH PROBABLE CAUSE.

Having concluded the affidavit for the search of Mercado's residence failed to establish probable cause for the search, I turn to the question whether the officers nevertheless acted in good faith and reasonable reliance on the warrant. If they did, then the exclusionary rule does not apply and the motion to suppress was properly denied. (*United States* v. *Leon* (1984) 468 U.S. 897, 922 [82 L.Ed.2d 677, 104 S.Ct. 3405]; *People* v. *Camarella* (1991) 54 Cal.3d 592, 602 [286 Cal.Rptr. 780, 818 P.2d 63].)

In *Leon*, the United States Supreme Court held the exclusionary rule does not bar evidence obtained by officers acting in good faith and in reasonable reliance on a search warrant ultimately found to be invalid. This rule applies to warrants invalidated for lack of probable cause unless the affidavit on which it is based is " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " (*Leon, supra,* 468 U.S. at p. 923 [82 L.Ed.2d at p. 699], quoting *Brown* v. *Illinois* (1975) 422 U.S. 590, 610-611 [45 L.Ed.2d 416, 431-432, 95 S.Ct. 2254].)

In *People* v. *Camarella, supra,* our Supreme Court answered some of the questions that have arisen in attempting to apply *Leon* to cases involving lack of probable cause. The court settled the test by which the objective reasonableness of the officer's decision to submit an affidavit to a magistrate is to be determined. The test is "whether a reasonable and well-trained officer 'would have *known* that his affidavit failed to establish probable cause and that he should not have applied for the warrant.' " (54 Cal.3d at pp. 605-606, italics in original.) The court also held the officer's objective reasonableness must be measured as of the point in time the affidavit was submitted to the magistrate. "[T]he fact that the warrant issued is of no significance." (*Id.* at p. 605, fn. omitted.)

Based on the holding in *Camarella,* I reject the People's suggestions the fact the magistrate issued the warrant is a significant factor in the good faith analysis and that it is enough the officer held "some substantial level of suspicion" even if he did not hold an objectively reasonable belief there was probable cause for the search.

I also reject the People's argument good faith is shown in this case because a reasonable, well-trained officer could not be expected to know

"there somewhere exists a formulaic rule that the phone-number related connection to contraband in this case was, categorically, insufficient to show probable cause." This argument misses the point. As *Camarella* demonstrates, an officer's objectively reasonable belief in probable cause to search does not become objectively *unreasonable* ex post facto merely because a reviewing court decides probable cause did not exist. (*Leon, supra,* 468 U.S. at p. 915 [82 L.Ed.2d at pp. 693-694].) In *Camarella,* the Court of Appeal held the affidavit failed to establish probable cause to search defendant's residence due to the lack of fresh corroborating evidence as to the reliability of an anonymous tipster. The Supreme Court assumed the Court of Appeal was correct on this issue but stated "[t]he question under *Leon* . . . however, is not whether further investigation would have been reasonable, but whether a reasonable officer in Addoms's position would have known that the affidavit, as it existed at the time it was to be presented to the magistrate, was legally insufficient without additional and more recent corroboration." (54 Cal.3d at p. 606, fn. omitted.) *Leon's* objective standard does not force the officer to second-guess the judiciary but it does require him or her to exercise independent, reasonable professional judgment. (*Leon, supra,* 468 U.S. at p. 919, fn. 20 [82 L.Ed.2d at p. 696].)

What is required under *Leon* and *Camarella* is that the officer's affidavit must contain at least the rudimentary indicia of probable cause. These include, but are not necessarily limited to, facts showing a nexus between the criminal activity, the items to be seized and the location to be searched; facts showing the officer's information is reasonably fresh; and, in the case of anonymous tips, facts corroborating the tips. (*Camarella, supra,* 54 Cal.3d at pp. 602, 606.) While the reviewing court may consider other factors bearing on good faith, such as whether the affidavit was previously rejected by other magistrates and whether it was reviewed by a deputy district attorney, (*id.* at p. 605, fn. 5) the presence of relevant facts and corroboration are the essential indicia of probable cause. *Leon* and *Camarella* themselves illustrate these indicia.

In *Leon,* the Supreme Court found the officer's affidavit was supported by much more than "bare bones." The affidavit related the results of an "extensive investigation." The defect in the affidavit, if any, was not that the facts, even if true, failed to establish probable cause for the search but that the "facts" which came from an untested confidential informant were not sufficiently corroborated. (468 U.S. at pp. 901, 904-905, 926 [82 L.Ed.2d at pp. 686-687, 700-701].)[3] In *Camarella,* the Court concluded the officer "conducted more than a 'bare bones' investigation" and that he "obtained sub-

---

[3]The court chose not to review the Ninth Circuit's holding the affidavit failed to establish probable cause for the search of defendants' residences. (*Leon, supra,* 468 U.S. at p. 905 [82 L.Ed.2d at pp. 686-687].) In applying the "objectively reasonable" standard, however, the

stantial corroborating information," albeit stale, to back up his anonymous and confidential informants. (54 Cal.3d at pp. 597-598, 606.) There was no contention the facts related by the informants, even assuming they were true, would not establish probable cause for the search. The court, in *Camarella*, also noted the existence of probable cause in that case was close enough to have divided reasonable judicial officers.

In *Leon* and *Camarella* the substantive facts recited in the affidavits, if true, would have led a reasonable, well-trained officer to conclude probable cause existed for the search. Furthermore, the officers in those cases at least made an attempt, even if an imperfect one, to corroborate the information they received from informants who were not presumptively reliable—anonymous tipsters and untested confidential informants.[4]

In *People* v. *Johnson* (1990) 220 Cal.App.3d 742 [270 Cal.Rptr. 70], the police received secondhand a tip from an anonymous caller who stated defendant had committed several robberies and a murder in the area. The caller described defendant's automobile and gave a partial license number and partial address. These facts were corroborated by police investigation. The police found no evidence, however, linking defendant to any of the crimes he was alleged to have committed. The officer preparing the affidavit conceded to the magistrate defendant was six inches taller than the suspect in one of the robberies. A search warrant based on the above information resulted in defendant's conviction of possession of cocaine for sale after his motion to suppress was denied. On appeal, the People, conceded lack of probable cause but argued under *Leon* the officer preparing the affidavit had a good faith belief in its sufficiency. The Court of Appeal rejected this argument noting that although the police had corroborated some aspects of the informant's claim the aspects corroborated were irrelevant to the allegations of criminal activity. "In short," the court concluded, "all the police had was an uncorroborated tip from an anonymous informant. . . . " '[A]ny rookie officer knows uncorroborated, unknown tipsters cannot provide probable cause for an arrest or search warrant." ' " (*Id.* at pp. 750-751.)[5]

Similarly, in *People* v. *Maestas* (1988) 204 Cal.App.3d 1208, 1219 [252 Cal.Rptr. 739], the court held "the failure to corroborate" the statements of

court noted the appellate panel was divided on the question of whether probable cause was established. (*Id.* at p. 926 [82 L.Ed.2d at pp. 700-701].)

[4]In *Camarella*, the court stated an officer was not required "to exhaust all avenues of investigation and corroboration" in order to satisfy *Leon's* objective standard. (54 Cal.3d at p. 606, fn. 6.) The court did not state, however, an affidavit would be sufficient which contained *no* corroboration in circumstances where corroboration is normally required. Indeed, the court found the affidavit in *Camarella* contained "substantial corroborating information." (*Id.* at p. 606.)

[5]In dictum, the court pointed out numerous things the police could have done but failed to do to corroborate the anonymous informant's tip. (*Johnson, supra,* 220 Cal.App.3d at p. 750.) It was this dictum which prompted the Supreme Court, in *Camarella*, to disapprove *Johnson*

two informants "whose credibility and reliability were very much in question" rendered it "entirely unreasonable for a well-trained police officer to believe in the existence of probable cause."[6]

In the present case the facts recited in the affidavit fail to establish any of the essential indicia of probable cause necessary to meet the *Leon* standard of objective reasonableness: facts showing a nexus between the criminal activity, the items to be seized and the place to be searched; facts showing freshness of the information; corroboration of the information received by the police.

The facts recited in the affidavit are: (1) Tuadles is the addressee of a package containing 12 pounds of marijuana; (2) someone identifying himself as Tuadles has called a North Carolina warehouse inquiring about the package; (3) that caller left a telephone number for callbacks regarding the package shipping label; (4) the telephone number is not listed to Tuadles and is not at the address where the package is destined; (5) drug dealers often use various locations to maintain their drugs, records and cash. From these facts the affiant concludes there is a fair probability drugs or evidence of drug dealing will be found at the address that corresponds to the telephone number.

It does not take a Sherlock Holmes to see the gaps in this logic.

First, *assuming* from the amount of marijuana in the package Tuadles was a drug dealer and considering drug dealers use various locations to stash drugs and related items, it does not logically follow drugs or evidence would be found at the location corresponding to the telephone number. As Officer Roberts explains in his affidavit, the reason why drug dealers use various locations is so that if the police or thieves discover one location the dealer will not lose everything. By using his name and address on the shipping label, this supposedly sophisticated drug dealer has already exposed one location to police and potential thieves. Why would he expose two locations of his stash by putting the telephone number of the second location on the shipping label? Logically, the location corresponding to the telephone number would be one of the *last* places one could reasonably expect to find drugs or evidence of drug sales.

---

"to the extent it may be read to require an officer to exhaust all avenues of investigation and corroboration at the risk of [failing to satisfy *Leon*]." (54 Cal.3d at p. 606, fn. 6.) However, the Supreme Court did not question *Johnson*'s holding a reasonable, well-trained officer would recognize an uncorroborated tip from an anonymous informant cannot provide probable cause for a search warrant.

[6]Although it found "the record in this case strongly suggests that a well-trained police officer would have known that the affidavit in question failed to establish probable cause" the court remanded the case for a further evidentiary hearing on the question. (*Maestas, supra,* 204 Cal.App.3d at p. 1221.)

Second, given that drug dealers use various locations to store drugs and related items and given that the police can apply for a warrant to search more than one place for an item, still there must be some articulable facts that make it fairly probable the thing searched for will be found in each location searched. No such facts were presented in the affidavit. There was no evidence Tuadles himself knew the location that corresponded to the telephone number much less that he had ever stored drugs or related items there. Officer Roberts could have had at most a hunch or a suspicion drugs or evidence of drug dealing might be found at the location in question but if a reasonable, well-trained officer knows anything about probable cause he or she knows a mere hunch or suspicion will not support a search warrant. (See *Leon*, *supra*, 468 U.S. at p. 915 [82 L.Ed.2d at pp. 693-694].)

The decision to search Mercado's residence arose from the facts his telephone number appeared on the shipping label and was used by a caller inquiring about the package. The affidavit contains no evidence to corroborate the suspected connection between Mercado, Tuadles and drug sales. Viewed in this light the instant case is similar to *People* v. *Johnson*, *supra*, 220 Cal.App.3d at page 746, in which the police received an anonymous tip defendant had committed various crimes. Such information does not establish probable cause unless it is corroborated in essential respects by other facts, sources or circumstances. (*Id.* at p. 749, and see cases cited.) Here the police failed to provide any corroborating evidence in the affidavit. More important, for purposes of a good faith analysis under *Leon*, Officer Roberts admitted at the suppression hearing his attempt to obtain corroborating evidence failed. Roberts testified he "made inquiries through several narcotic intelligence systems that I have access to" and ran a record check on Mercado. The results were negative. Roberts conceded he had no information at the time he applied for the search warrant connecting Tuadles and Mercado.

The third essential indicator of probable cause is facts establishing whether the officer's information is fresh or stale. As with the other indicia of probable cause, where the affidavit contains facts relating to freshness the inquiry for purposes of *Leon* is not whether a reviewing court ultimately agrees with the officer's assessment the information is sufficiently fresh to support a belief in probable cause. Instead the inquiry is whether a reasonable, well-trained officer would know the facts are too stale to support a determination of probable cause. (See *Camarella*, *supra*, 54 Cal.3d at p. 606.) However, where the officer has submitted *no* facts as to the freshness of the information he or she cannot assert a good faith belief in the sufficiency of the affidavit because any reasonable, well-trained officer is deemed to know the affidavit must contain such facts. (See *Sgro* v. *United*

*States* (1932) 287 U.S. 206, 211 [77 L.Ed. 260, 263, 53 S.Ct. 138, 85 A.L.R. 108]; *People* v. *Cook* (1978) 22 Cal.3d 67, 97 [148 Cal.Rptr. 605, 583 P.2d 130].) In this case, Officer Roberts provided the magistrate with no facts as to when the shipment left the Philippines, when it arrived at the warehouse in Greensboro, when it was discovered by the Greensboro police or when the telephone calls were placed giving Mercado's telephone number for callbacks. It was impossible for the magistrate to determine from the affidavit whether the telephone number was so old it could not be a reliable indicator the party at that number was the same party who occupied those premises when the number was placed on the shipping label and used for callbacks concerning the shipment containing marijuana.

I note the high courts in *Leon* and *Camarella*, in finding the officer's belief in the adequacy of the affidavit was objectively reasonable, commented the affidavit had persuaded reasonable and competent judges as to the existence of probable cause. (*Leon*, *supra*, 468 U.S. at p. 926 [82 L.Ed.2d at pp. 700-701]; *Camarella*, *supra*, 54 Cal.3d at p. 606.) I do not interpret these comments as suggesting lower court approval of the affidavit is sufficient to establish the objective reasonableness of the officer who submitted it. If that were the case affidavits would be unreviewable for objective reasonableness because by definition a reasonable and competent jurist has found the affidavit established probable cause or the warrant would never have issued. The situation where the issuing magistrate wholly abandoned his or her judicial role remains, under *Leon*, a separate ground for invalidating the warrant and suppressing the evidence seized. (*Leon*, *supra*, 468 U.S. at p. 923 [82 L.Ed.2d at pp. 698-699].)

I believe the role of a reviewing court on the issue of objective reasonableness is to be found in an earlier portion of the *Leon* opinion in which the court states: "Even if the warrant application was supported by more than a 'bare bones' affidavit, a reviewing court may properly conclude that, notwithstanding the deference that magistrates deserve, the warrant was invalid because the magistrate's probable-cause determination reflected an improper analysis of the totality of the circumstances . . . ." (*Leon*, *supra*, 468 U.S. at p. 915 [82 L.Ed.2d at p. 694].)

For the reasons set forth above, I conclude the affidavit for the search of Mercado's residence was lacking in the necessary indicia of probable cause and that a reasonable, well-trained officer would have known that and not submitted the affidavit to a magistrate.

It is clear that without the evidence seized pursuant to the search warrant for Mercado's home—marijuana, scales and cash—the People would have

no case against Mercado. Therefore, I would reverse the judgment against this defendant, while affirming the judgment against Tuadles.

Appellants' petition for review by the Supreme Court was denied October 16, 1992.