Filed 1/9/15  P. v. Brown CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B254214 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LA070896) |
| v. | |
| DAVID LEE BROWN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Susan M. Speer, Judge.  Affirmed.

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Defendant and appellant, David Lee Brown, appeals from the judgment entered following his pleas of no contest to first degree burglary (Pen. Code, § 459)[1] and attempted first degree burglary (§§ 664, 459) and his admissions the offenses amounted to serious felonies within the meaning of section 1192.7, subdivision (c)(18), that he previously had been convicted of an offense which amounted to a strike pursuant to the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and previously had been convicted of two serious felonies within the meaning of section 667, subdivision (a)(1). The trial court sentenced Brown to 20 years 8 months in state prison.[2] We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts.*[3]

On April 7, 2011, Los Angeles Police Department Detective Supervisor William Dunn reported to a residence on Ingomar Street in Reseda. When Dunn arrived at the single family home, the oval window in the front door was broken. There were droplets of blood on the door and on the driveway. Dunn "swab[bed]" the door frame, collecting several drops of blood, then placed the swabs in a sealed package which was later booked into evidence. Dunn then took a swab from the blood on the driveway, placed it in a "pre-sealed DNA swab kit" and later booked it into evidence.

When Dunn spoke to the owner of the home, the owner told Dunn that, when he had left his house earlier that day, the door had not been damaged and there had been no blood on the door or driveway. When the owner arrived back at his home and found the door had been broken, he had called the police. When the officers responded, they made certain no one was inside the house.

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

[2]     In his opening brief, counsel for Brown indicates that on April 13, 2014, with the consent of the prosecutor, the trial court corrected a mathematical error in Brown's sentence and reduced it to 19 years 4 months.

[3]     The facts have been taken from the transcript of the preliminary hearing.

Elizabeth Sholl is a criminalist with the Los Angeles Police Department assigned to the Serology DNA Unit in the Scientific Investigation Division. She has been performing DNA analysis for a little over four years. On May 10, 2012, when Sholl compared a sample of DNA from a swab taken from the inside of Brown's cheek, it matched the DNA taken from the blood stains on the door jamb at the residence on Ingomar Street. According to Sholl, the chances the samples would match is "one in 500 quadrillion."

On May 4, 2012, Johnny Guigneaux lived in a single family home on Hartland Street in Van Nuys. After making certain all the doors were locked, Guigneaux left his house at approximately 8:30 in the morning. When he returned at approximately 10:30 a.m., police officers were on the sidewalk in front of the residence waiting for him. The officers asked Guigneaux to look around his house and, as he did so, he noted the front door was open and the back metal door, which covered a second door, was open and had been damaged. The metal door had a hole in it near the lock and the interior door had "scuff marks on it." When Guigneaux went inside his house he found the doors to the medicine cabinet in the bathroom had been opened and his computer was no longer in his office. The clothes in the closet had been "jumbled up" and the files in his office had been opened and left on the floor. In the back yard, plants had been "trampled over." Guigneaux had never given Brown or Brown's cohort, James Strong, permission to enter his yard or house.

Edmund Russell, a detective with the Los Angeles Police Department, is the lead investigator of the Operation Valley Bureau Burglary Task Force. On May 4, 2012, the detective observed a black Mercedes driving around the general vicinity of the house which belonged to Guigneaux on Hartland in Van Nuys. The vehicle was registered to Brown.

Russell and his partner, Officer Nicholas Williams, who were in plain clothes and driving a plain car that day, saw Brown's codefendant, Strong, who was driving the Mercedes, pull up in front of Guigneaux's home at approximately 9:30 a.m. At that time, Russell did not see a passenger in the car. Russell pulled into a driveway approximately

3

four houses away, parked, got out of his vehicle and, using binoculars, observed a pedestrian approach the passenger side of Brown's car and have a short conversation with Strong. The pedestrian then approached Guigneaux's front door, knocked and waited for a moment or two. When no one responded, the pedestrian, who Russell later identified as Brown, returned to the car, had a brief conversation with Strong, then approached the house from the west side and walked toward the back yard. A short time later, Brown came out of the house through the front door, carrying a dark object in his left hand. He placed the object in the trunk of the Mercedes and, after Brown got into the car, Strong drove off.

Other officers in the area with whom Russell had communicated saw the Mercedes, followed it and, within approximately five minutes, stopped the car and detained Brown and Strong. In the trunk of the car, officers found Guigneaux's laptop computer.

Russell had initially received information regarding Brown and his Mercedes sometime in January of 2012. The information connecting the two consisted of, at least in part, a DNA sample taken from Brown.[4]

Nicholas Williams is a Los Angeles police officer who, on May 4, 2012, was assigned to the Operation Valley Bureau Burglary Task Force and participated in the apprehension of Brown and Strong. Williams "search[ed] through items of property that [had been] collected [from the black Mercedes after Brown's and Strong's] arrest." Included in that property were cell phones. Williams was able to determine which cell phone had belonged to which defendant and concluded Brown and Strong had spoken to each other on their phones at 9:44 that morning.

During his investigation, on May 8, 2012 Williams had taken a "cheek swab" from Brown. The officer had then booked the swab into evidence.

In May 2012, Los Angeles Police Officer Matthew Stickney was assigned to the Southeast Gang Enforcement Detail. Stickney had reviewed documents which related to

---

[4] The prosecutor referred to the information as a "cold DNA hit."

4

Brown, including arrest reports, FI cards, photographs and pictures of tattoos. One FI card viewed by Stickney was related to a stop made by police on September 10, 2011. The card indicated Brown admitted he was a member of the East Coast Crips and that his moniker was D-Dog. He was, at times, also referred to as Big D. Another FI card reviewed by Stickney, dated November 27, 2010, indicated Brown had admitted belonging to the East Coast Crips.

Officer Stickney was of the opinion the May 4, 2012 Hartland Street burglary had been committed for the benefit of the gang. It not only benefitted the gang financially, it gave its members prestige, which assisted in recruiting young members. Stickney believed, in general, the East Coast Crips commit robberies, shootings, burglaries and narcotics sales.

2. *Procedural history.*

In an information filed August 7, 2012, Brown was charged in count 1 with the May 4, 2012 commission of first degree residential burglary on Hartland Street, a serious felony within the meaning of section 1192.7, subdivision (c).

In count 2,[5] Brown was charged with the April 7, 2011 attempted first degree residential burglary on Ingomar Street, a serious felony within the meaning of section 1192.7, subdivision (c).

It was further alleged with regard to counts 1 and 2 that any time imposed was required to be served in state prison (§ 1170, subd. (h)(3)) as Brown previously had suffered convictions for the serious and violent felonies (§§ 1192.7, 667.5, subd. (c)) of being a felon in possession of a firearm and robbery. In addition, it was alleged with regard to counts 1 and 2 Brown had suffered the serious felonies of being a felon in possession of a firearm, robbery and battery committed against a public officer engaged in the commission of his or her duties (§ 667, subd. (a)(1)) and that he had failed to remain free of custody for a period of five years (§ 667.5, subd. (b)). Finally, it was alleged with regard to both counts 1 and 2 the offenses were committed for the

---

[5] James Strong was charged as a codefendant only with regard to count 1.

promotion, benefit of and at the direction of a criminal street gang pursuant to section 186.22, subdivision (b)(1)(B).

On May 2, 2012, a magistrate issued a search warrant authorizing the attachment of a Global Positioning System (GPS) tracking device to Brown's Mercedes which would allow law enforcement officers to track the location of the vehicle. Although the application for and contents of the warrant were initially sealed, on November 29, 2012, counsel for Brown made a motion to quash the search warrant and all evidence seized as a result of the warrant. In response, the trial court ordered the warrant unsealed, that a copy be provided to defense counsel and that the matter be continued to January 10, 2013. At the same proceedings, Brown's counsel moved that the information be set aside pursuant to section 995. The trial court ordered that the section 995 motion, too, would be heard on January 10, 2013.

The unsealed warrant, which allowed the attachment of a GPS to Brown's Mercedes, revealed that Los Angeles Police Officer Nicholas John Williams indicated that in the summer of 2011, Los Angeles Police Department detectives had received from a confidential reliable informant information regarding jewelry store "fence[s]" which were buying stolen jewelry from " 'flocking crews' " responsible for multiple residential burglaries in the Los Angeles area. Brown and his Mercedes had been observed near several of the burglarized homes. In addition, with regard to one residential burglary, Brown's DNA had been found in a blood sample taken from the door and the driveway of the house. Later, Brown was observed performing a "quick hand to hand exchange" with one of the employees in one of the jewelry stores believed to be a fence. When officers later stopped Brown's Mercedes for failing to have proper license plates, Brown consented to a search of himself and his car. Brown was found to have approximately $2,000 in cash on his person. Inside the Mercedes, officers found jewelry and purses. Finally, it was asserted Brown had an extensive criminal history which included "property and gang related crimes." In view of Officer Williams's statements, the magistrate determined probable cause existed to believe that latitude and longitude data

6

concerning the location of Brown's Mercedes would yield evidence of crimes such as residential burglaries, receiving stolen property and conspiracy to commit such crimes.

At the January 10, 2013 proceeding, the trial court indicated it had read and considered Brown's counsel's motion and the People's opposition with regard to the section 995 motion. The court then granted the motion to dismiss with regard to the gang allegation made pursuant to section 186.22, subdivision (b)(1)(B) with regard to count 2.

On March 21, 2013, Brown substituted in private counsel for the public defender's office. Then, on October 9, 2013, Brown informed the trial court he wished to again be represented by the Public Defender Department. Brown indicated private counsel had failed to adequately represent him and he believed he would do "better with the public defender." After further discussion among the parties, the trial court granted Brown's request, relieved private counsel and reappointed the public defender.

At proceedings held on December 9, 2013, counsel for Brown filed a "pre-trial 1538.5 [motion] re: quash of search warrant." Counsel for Strong indicated Strong was joining the motion. After each party submitted on their papers, the trial court, "[b]ased upon the totality of the circumstances as outlined in the search warrant . . . [determined the prosecution had] sufficiently [met] the test" for issuance of a warrant and "the defense [had failed] to prove otherwise." The trial court found the issuing magistrate "had a substantial basis for believing . . . that the warrant was valid and even if [that was incorrect,] . . . the good faith exemption would apply."

On February 3, 2014, after the trial court stated it was "striking the gang allegation," the court indicated both defendants had decided to "plead[] open to the court." Brown had determined he would plead no contest to both counts and admit previously having suffered two convictions for serious felonies pursuant to section 667, subdivision (a)(1) and having been convicted of "strikes" in exchange for a sentence of 20 years 8 months in state prison.

After Brown waived his right to a trial, his right to confront and cross-examine the witnesses against him, his right to remain silent and his right to produce a defense, he pled no contest to first degree residential burglary (§ 459) as alleged in count 1 and

7

attempted first degree residential burglary (§§ 664, 459) as alleged in count 2. He then admitted both crimes amounted to serious felonies within the meaning of section 1192.7, subdivision (c), that he previously had suffered convictions for two serious felonies pursuant to section 667, subdivision (a)(1) and that he previously had been convicted of two "strikes" within the meaning of the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)).

Brown waived arraignment for judgment and indicated there was no legal cause why sentence should not be imposed. After striking one of Brown's "strikes," the trial court sentenced him to the mid-term of four years in prison for his conviction of first degree burglary as alleged in count 1, then doubled the term to eight years pursuant to the Three Strikes law. In addition, the court imposed a consecutive term of 10 years for Brown's admission he previously had been convicted of two serious felonies within the meaning of section 667, subdivision (a)(1). Accordingly, with regard to count 1, residential burglary, the trial court imposed a total term of 18 years in state prison. As to count 2, attempted first degree residential burglary, the trial court sentenced Brown to a consecutive term of one-third the midterm, or 16 months in state prison. The court then doubled the term to 32 months pursuant to Brown's admission he previously had been convicted of a "strike" pursuant to the Three Strikes law. In total, Brown was sentenced to 20 years 8 months in prison. The court then dismissed pursuant to section 1385 all remaining counts and allegations.

The trial court ordered Brown to pay a $280 restitution fine (§ 1202.4, subd. (b)), a stayed $280 parole revocation restitution fine (§ 1202.45), a $60 criminal conviction assessment (Gov. Code, § 70373), an $80 court operations assessment (§ 1465.8, subd. (a)(1)), and a $10 crime prevention fine (§ 1202.5). Brown was awarded presentence custody credit for 641 days actually served and 641 days of good time/work time, for a total of 1,282 days.

Brown filed a timely notice of appeal on February 3, 2014.

## CONTENTS

After examination of the record, appointed appellate counsel filed an opening brief which raised no issues and requested this court to conduct an independent review of the record. By notice filed September 10, 2014, the clerk of this court advised Brown to submit within 30 days any contentions, grounds of appeal or arguments he wished this court to consider. On October 14, 2014, Brown filed a letter brief in which he asserted the magistrate improperly issued the warrant which allowed the attachment of a GPS device to his car. He indicated he had committed no conduct prior to the issuance of the warrant which justified the magistrate's authorization of it. However, a review of the contents of the affidavit in support of the warrant indicate that in 2011, a number of individuals, identified primarily as gang members and including Brown in his Mercedes, were seen in and around homes where residential burglaries had been committed. Individuals, including Brown, were then watched as they sold the stolen goods to jewelry stores acting as "fence[s]." In addition, with regard to one residential burglary, DNA later determined to be Brown's had been found on the door and driveway of the residence. Under these circumstances, the magistrate properly determined probable cause existed to believe that latitude and longitude data concerning the location of Brown's Mercedes would yield evidence of crimes such as residential burglaries, receiving stolen property and conspiracy to commit such crimes. (*People v. Tuadles* (1992) 7 Cal.App.4th 1777, 1783-1784; See *People v. Garcia* (2003) 111 Cal.App.4th 715, 720; cf. *U.S. v. Maynard* (2010) 615 F.3d 544, 564 with *U.S. v. Jones* (2012) 565 U.S. __ [132 S.Ct. 945, 181 L.Ed.2d 911] [Evidence improperly obtained from Jones, a suspected narcotics trafficker, who drove his Jeep for 28 days without realizing police had, *without benefit of a warrant,* attached a GPS device to track the vehicle's movements].)

Brown further asserted he was stopped by police while in his Mercedes for no apparent reason. However, according to the affidavit in support of the warrant, Brown was stopped because he did not have proper license plates on his car. (See *United States v. Arvizu* (2002) 534 U.S. 266, 273-274.) Finally, Brown contended he was forced to enter a plea "because of [his] prior strikes and past record." The contention is without

9

merit.  The trial court had struck the "gang allegation" and one of Brown's strikes.  Under these circumstances, the record indicates Brown voluntarily pled no contest to the alleged crimes and admitted the remaining allegations.

## REVIEW ON APPEAL

We have examined the entire record and are satisfied counsel has complied fully with counsel's responsibilities.  (*Smith v. Robbins* (2000) 528 U.S. 259, 278-284; *People v. Wende* (1979) 25 Cal.3d 436, 443.)

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

KITCHING, Acting P. J.

LAVIN, J.*

---

* Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10